## CUMMINGS v. LANGROISE.

### No. 2075.

District Court, D. Idaho, S. D.

Dec. 12, 1940.

Richards & Haga, Boise, Idaho, and T. Pope Shepherd, of Chattanooga, Tenn., for plaintiff.

Sam S. Griffin and W. E. Sullivan, both of Boise, Idaho, for defendant.

CAVANAH, District Judge.

The nature of the case, as disclosed by the record, was given in the opinion of the court on the motions, and it is not again necessary to repeat it, for it appears that the plaintiff, individually and as trustee, seeks to recover from the defendant as executor, and from the estate of James McDonald, Jr., the principal sum of $79,-631.14, interest and attorneys' fees, and a decree that the plaintiff has a lien upon the stocks, bonds, securities, and assets of the estate of James McDonald, Jr., now in the possession and under the control of the defendant as executor, arising out of the estate of McDonald, Jr.

The evidence discloses in substance that James McDonald, Jr., died on the 2d day of July 1936, and his will was admitted to probate in the Probate Court of Ada County, Idaho, and the defendant qualified as the executor of his estate.

McDonald, Jr., during his lifetime incurred numerous large obligations and many orders in writing were executed by him, by the terms of which he assigned an annuity and certain portions of the net income derived from his father's estate, and which the testamentary trustees made payment.

Judgments were obtained by some of his creditors and others threatened to sue and levy upon and attach his share of his father's estate, and if that had been done it would have left him without income and means for the maintenance of himself and family.

In December 1931 he was unable to secure loans to pay his indebtedness, and he appealed to the plaintiff, a friend of many years, for financial aid in order to provide for the preservation of his estate and living expenses for himself and family, and for such purposes the plaintiff then loaned him $50,000 evidenced by three promissory notes, one for $15,000; one for $15,000; and one for $20,000, all of date December

17, 1931, and at the time three agreements in writing were accordingly entered into providing that the loan made by plaintiff and evidenced by the three notes, and as security for the payment of the same, he transferred and assigned to the plaintiff, all sums due and to become due from his share of the trust estate held and administered by the trustee for the plaintiff's benefit, and his interest in the testamentary trust and trust estate.

The plaintiff under the agreements made an advance to McDonald, Jr., of $50,000 and borrowed on the account of McDonald, Jr., in the taking care of the numerous obligations and financing his living expenses and the protection of his estate. Later, in November 1935, the plaintiff and McDonald, Jr., entered into another written agreement securing all advances made after the testamentary trustees had stopped paying the income and annuity and by the terms thereof promised and agreed that the plaintiff should have a lien, and as security for all advances so made and to be made, on the share and interest of his estate. When the four agreements are read together it appears clear that it was the intention of McDonald, Jr., and the plaintiff, and those acting thereunder, that the three promissory notes, aggregating $50,000, and other advances made since the testamentary trustees stopped paying the annuities and income, were to be protected by the transfer and assignment of, not only the annuities and income of McDonald, Jr., but of the testamentary interest.

At the time of the execution of the agreements on December 17, 1931, McDonald, Jr., had a large number of creditors who were pressing him for payment and proceeding to attach and levy upon his interest in the testamentary estate. He needed immediate assistance as he had no other income, so he appealed to the plaintiff, who not only loaned him the $50,000 but made advances thereafter.

It seems to have been the intention of the parties and those acting thereunder that the assignments were for the purpose of securing the plaintiff for the loans he made, and to be made as here stated, to insure that no creditor could attach and levy upon McDonald Jr.'s interest in the testamentary estate, to insure sufficient income for his living expenses and to appease creditors by giving some cash out of plaintiff's loan and pro-rate a share of the moneys that would be received by plaintiff under the assignments.

The agreement was made in Tennessee and its highest court has said that the principle governing the construction of a contract is the intention of and the interpretation placed thereon by the parties, by their acts and declarations. Board of Education v. Board, 160 Tenn. 351, 24 S. W.2d 889; Canton Cotton Mills v. Bowman Overall Co., 149 Tenn. 18, 257 S.W. 398; State ex rel. v. Board of Trust, 129 Tenn. 279, 164 S.W. 1151.

The fact that the plaintiff paid first, the claims of other creditors to obtain settlement through which he obtained reduction of claims and not paying himself all of the income until his notes and advances had been paid in full and not have protected McDonald, Jr., and his estate, should not now deprive the plaintiff of his lien and security under the contract, as there is no priority of agreement provided, and because he graciously deferred payment of his claims, and continued advancing money and took his chances, when there was no provision in the agreements requiring them to be paid first, should not in justice militate against him and defeat him of his rights under the agreements.

Within the time required by notice given by defendant as executor of the McDonald, Jr., estate, to the creditors to file claims, plaintiff filed his claim in which he reserved and claimed all rights and benefits to which he might be entitled to resort to under the security assigned to him, and this suit, therefore, was brought within three months after it was rejected. Section 15-609, I.C.A.

The statute of the state provides that after claims are filed with the executor he must endorse thereon, within sixty days, his disallowance or rejection. Section 15-607, I.C.A.

None of the items of the plaintiff's claim were barred by any limitation statute of the state when McDonald, Jr., died on July 2, 1936. But the defendant urges that the five-year general statute of limitation, § 5-216, I.C.A., applies from the date of maturity of the debt and insists that it supersedes the probate statute in the administration of estates, and if so, plaintiff's claim was barred at the time of filing his suit on February 6, 1940. While the plaintiff asserts that the general statute of limi-

tations was superseded during the time of probate proceedings until the claim had been filed and disallowed by the executor. In determining what was the five-year period of the general limitation statute, and if it had expired, it would be necessary to include in it the time intervening in the probate proceedings from the date of the death of McDonald, Jr., on July 2, 1936 until suit was brought. The defendant, executor, was appointed August 20, 1936, and the plaintiff's claim was presented to him within the six-month period required by the statute and rejected by the executor on November 11, 1939, some two years and eight months after presentation. The present suit was instituted February 6, 1940, within three months after the claim was rejected, as required by statute. The steps required to be taken by a creditor of an estate as provided by the laws of Idaho are that after notice to file claims has been given by the executor, he must present it to the executor within the time prescribed by the notice, and the executor must, within sixty days after its receipt, endorse thereon his allowance or rejection, and if rejected, he must within ten days thereafter notify the claimant of such rejection. If rejected, the holder of the claim must bring suit in the proper court against the executor within three months after notice of its rejection, if the claim is then due. No claim must be allowed by the executor which was barred by the statute of limitation at the time of the death of the decedent. An action on any claim against an estate shall not be maintained thereon unless the claim is first presented to the executor. Sections 15-604, 15-607, 15-609, 15-610, 15-611, I.C.A.

The Supreme Court of Idaho has interpreted section 15-611, I.C.A., in the cases of Flynn v. Driscoll, 38 Idaho 545, 223 P. 524, 34 A.L.R. 352, and Wormward v. Brown, 50 Idaho 125, 294 P. 331; and held that the failure of the executor to allow or reject a claim does not amount to a rejection and that before action can be maintained thereon against an estate the claim must first be presented to the executor and rejected.

■ The Supreme Court of California in the cases of Smith v. Hall, 19 Cal. 85, and Quivey v. Hall, 19 Cal. 97, when in considering whether the general statute of limitation supersedes the probate statute, reached the conclusion that the right to sue comes from the refusal of the executor to acknowledge the claim against the estate and does not accrue until the presentation of the claim and that it would be unjust to hold that the claim was barred by the statute when the claimant was in no legal default, so it will be observed that the Supreme Courts of Idaho and California have held that the general statute of limitation was superseded by the provisions of the probate statute relating to the filing of claims and the bringing of suit upon rejected claims after they are first presented to the executor, and during the time the executor is considering it a creditor is prohibited from instituting suit thereon, and the time intervening between the death of the decedent and when the claim is rejected by the executor is not to be computed as any part of the time within which action must be brought.

■ The general statute of limitation of five years had not run either at the time of the death of McDonald, Jr., or at the time the claim here was presented to the executor. It appears clear that the claims for payment of money required to be filed against an estate are controlled by the probate statute, and those statutes, as construed by the Supreme Court of the state, prohibit the bringing of an action until the claim is rejected and hence the statute of limitation as to such claims is stayed by Section 5-234, I.C.A., which provides: "When the commencement of an action is stayed by injunction or statutory prohibition the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action."

The Supreme Courts of Kansas and Pennsylvania adhere to this principle in the cases of Nelson v. Herkel, 30 Kan. 456, 2 P. 110; and In re McCandless' Estate, 61 Pa. 9.

The cases cited by the defendant upon this question when applied to the statutes of Idaho are not analogous.

■ The further objection to the application of the statute of limitation to the plaintiff's cause of action is that McDonald, Jr., acknowledged the obligation which started a new period for the running of the statute of limitation. In this respect the Supreme Court of the state has considered Section 5-238, I.C.A., relating to acknowledging a debt and held in the case of Dern v. Olsen, 18 Idaho 358, 110 P. 164, 167, L.R.A.1915B, 1016, Ann.Cas.1912A, 1: "This statute recognizes two methods, one

an acknowledgment and the other a promise. It also recognizes two kinds of 'contract,' one a 'new' contract, and the other a 'continuing' contract. This statute would be complete for the purposes of the present action by reading it as follows: 'No acknowledgment is sufficient evidence of a continuing contract by which to take the case out of the operation of this title, unless the same is contained in some writing,' etc. A debt that has not yet been barred by the statute of limitations is undoubtedly a 'continuing' contract within the meaning of this statute. An acknowledgment in writing of the existence of such a contract is the acknowledgment of a 'continuing contract' within the meaning of this statute, and simply fixes a new date from which the statute of limitations begins to run. It in no respect changes, alters, or modifies the original contract. It is simply a waiver of that portion of the statute of limitations which may have run prior to the 'acknowledgment.' "

The evidence discloses that in November 1935 McDonald, Jr., executed Plaintiff's Exhibit 4, prepared by his counsel for the purpose of obtaining additional advances from the plaintiff. That instrument recognized that advances had been made and loans outstanding, and acknowledged the assignment as security for indebtedness to the plaintiff as stated. In January 1936 McDonald, Jr., approved in writing the report of the plaintiff as trustee, which shows the advances up to that time by the plaintiff, and that none of these loans and advances had been repaid. It showed in detail every item paid by the plaintiff from the time of his trusteeship to August 1935. Such approval of the report is a recognition of the advances and loans made by the plaintiff and is an acknowledgment of the fact that they had not been repaid, and the debt continuing. While under the evidence when applied to the statute of limitations of the state and the acknowledgment of the indebtedness here, by McDonald, Jr., fixing a new date from which the statute of limitations begins to run prevents the application of the general statute of limitation, yet this brings us to the further thought, this being a suit in equity for enforcement of a lien, a court of equity is not bound by, or required to apply the statute of limitations if it works an injustice to the creditor and unusual conditions or extraordinary circumstances made it inequitable. Manifestly, under the

undisputed evidence, the plaintiff has loaned and advanced to McDonald, Jr., a large sum of money in the amount of $79,631.14 under circumstances and at numerous times when it was greatly needed in the preservation of his estate, support of himself and family and for payment of numerous large counsel fees. If there ever was a time when a court of equity should, under the facts as here, and where the plaintiff nursed his claims with patience, not bar a recovery under the statute of limitations, if the statute did apply, it seems here clearly to exist. Winget v. Rockwood, 8 Cir., 69 F.2d 326; Johnson v. White, 8 Cir., 39 F.2d 793.

The claim of the plaintiff as filed with the executor contained all the information and was in proper form as required by the laws of Idaho. But it is further urged by the defendant that the three assignments do not grant to the plaintiff a lien upon the testamentary estate, as that only applied to the annuities and income thereof. This requires a careful reading of these instruments, and the agreements of November 1935 and of September 30, 1933, and when in considering them together it is just one contract between the parties and referring, first to Exhibit 5, it appears clearly that McDonald, Jr., assigned and set over:

"1. All right, title, interest or claim, whether at law or in equity, I now have or may hereafter acquire in or to the corpus of the estate of my father, James McDonald (sometimes referred to as James McDonald, Sr.), under and by virtue of his will dated June 26, 1913, and the codicil thereto dated April 14, 1914, and trust or trusts created thereunder, as the same have been construed, * * * together with all right, title and interest, whether at law or in equity, which the party of the first part may now have or has heretofore had or may acquire in the estate of James McDonald, Sr., as an heir at law of his father; together with all the right of use and enjoyment thereof now vested in the party of the first part.

"2. All annuities given to James McDonald, party of the first part herein under the said will of his father, as the same has been construed as aforesaid or otherwise, it being the intent of the party of the first part to assign each and every annuity granted or given him by the will of his father, or codicil thereto, which he is

now, or has been heretofore receiving, or which he may now or hereafter claim.

"3. Any and all income accrued or from time to time accruing to the party of the first part from his interest in the trust funds in the possession or under the custody or control of the Fulton Trust Company of New York, a corporation, and Joseph S. Graydon (substituted for Lawrence Maxwell), as executors and/or trustees under the will of James McDonald (Sr.).

"To have and to hold the same unto the said Will Cummings, his successors and assigns, forever, subject to the following purposes:

"This assignment and conveyance is for the purpose of securing the payment of three promissory notes executed on this date by the party of the first part, payable to the order of the party of the second part, as follows:

"One due and payable one (1) year from date hereof in the principal sum of $15,-000.00.

"One due and payable two (2) years from date hereof in the principal sum of $15,000.00.

"One due and payable three (3) years from date hereof in the principal sum of $20,000.00. Each of said notes bearing interest from date at the rate of six per cent per annum, payable annually."

This assignment expressly provides security for the payment of three notes out of the corpus of the estate and the annuities and income thereof. One of the notes of $15,000 was thereafter taken up by the execution of a note by McDonald, Jr., on September 21, 1933. It was also secured in another agreement between the parties, of date September 30, 1933, which states that it is secured by the agreement of December 17, 1931.

The instrument, Exhibit 6, does not grant security for advances as it merely directs that Cummings, beginning with January 1, 1932, applying the amount received as surplus income over and above the amount necessary to pay debts secured by assignment of $2,000 per month, from which should be paid $1,000 per month to Martin W. Littleton of New York City, and the necessary expenses of Cummings' agency and trusteeship, including disbursements, for taxes and other incidentals, and the balance thereof to be pro-rated on the balance due on the claims set out in the schedule annexed.

As to Exhibit 24 it is an instrument between McDonald, Jr., first party, and Cummings, second party, and Leo J. Falk, third party, and it provides that as a large number of the creditors of McDonald live in Idaho, and it is desirable that Cummings have an agent in that state to assist him in the management of his trust and that as Cummings is to receive $5,000 per annum for his services as said agent, he was authorized to employ Falk to assist him in Idaho, to be paid $2,500 per annum out of the $5,000 which Cummings was to receive.

As to Exhibit 4 of November 1935, it provides, after referring to the former agreements, and that payment of the income and annuity have been withheld by the trustees under a notice of tax levy by the government; and as it was the purpose of the agreements and assignments that McDonald shall have the income for his support continuously and regularly, that: "Now, therefore, the party of the first part, in consideration of the moneys heretofore advanced by the party of the second part to the party of the first part since the annuity payments have been stopped, and in consideration of the moneys to be hereafter advanced to the party of the first part until such time as said annuity or income is released to him, agrees that said advancement so made and to be made shall be protected by the assignment heretofore made by the party of the first part to the party of the second part." So it appears clear that the last-mentioned assignment agreement made between McDonald, Jr., and Cummings confines all advances other than the three notes to those made by Cummings, "since annuity payments have been stopped and in consideration of the moneys to be hereafter advanced to the party of the first part until such time as said annuity or income is released to him, agrees that said advancement so made and to be made shall be protected by the assignments heretofore made by the party of the first part to the party of the second part."

The further contention is made by the defendant that the claim of the plaintiff presented to the executor does not comply with section 15-608 of the Idaho laws, in that there was not accompanied copies of the assignments upon which

plaintiff claims security and lien. In other words, when a claimant claims a lien upon an estate of a decedent, he must attach to his claim a copy of the instrument evidencing it. This question was disposed of by the court in the opinion on the motions to dismiss as to the requirement of the state statute, and the evidence now applied sustains that conclusion. A substantial compliance with the statute is all that is required, and that was done. As we have here a state of facts disclosing that copies of the three notes were attached to the claim and reference therein made to the instruments, copy of which had been previously filed with the executor and which the claimant asserted therein to have given him a lien on the testamentary estate, income and annuities. The executor was informed that the contracts which had already been filed with him provided for the payment of the notes and those advances here referred to, and provided security for the same. It would be repetition for the claimant to have, under such circumstances, again furnished to the executor copies of the contracts. After all, the purpose of the statute is to require creditors to furnish to the executor copies of the instrument upon which the claim is predicated, and it is immaterial if it is done before or at the time the claim is presented to him.

The Supreme Court of the state when in interpreting the statute held that the filing of a claim without claiming a mortgage lien securing it does not ipso facto operate as a waiver of the mortgage lien. Kendrick State Bank v. Barnum, 31 Idaho 562, 173 P. 1144, 2 A.L.R. 1129.

■ The plaintiff's claim contains certain items paid to creditors of McDonald, Jr., consisting of the note in favor of W. H. Cheney for $2,342.80, this item covered money borrowed by the trustee for the protection of the estate. It was approved by McDonald, Jr., and also an item as attorneys' fee paid to Wilkes Thrasher of $500 which was also approved by McDonald, Jr., and which was for services rendered in the investigation of the matter for McDonald, Jr., and also includes $437.50 paid for services rendered by Carl S. Peterson in keeping the books and records of the trusteeship. This expense was agreed to by McDonald, Jr., and the plaintiff at the time plaintiff's trusteeship was formed. It is sufficient to say that whether the item of necessary expense is agreed to or not in carrying on the trusteeship the plaintiff would be entitled to recover the same.

■ The further inquiry is whether plaintiff is entitled to recover attorney's fees. The notes for money loaned to McDonald, Jr., provide for the allowance of an attorney's fee, and the trustee would be entitled to attorney's fee incurred, and necessary for service rendered in the preservation of the estate. It appears that a suit was instituted in the District of Columbia over the estate of McDonald and the plaintiff was compelled to appear on account of his trusteeship. He was obligated to defend as to whose possession the assets held by the trustees of the McDonald, Sr., estate should go to. McDonald, Jr., had created, by the contracts here, the trusteeship of which the plaintiff was made trustee, and it was his contract which necessarily required the plaintiff to sustain, and in doing so he had to employ counsel. Therefore it seems that a reasonable sum should be allowed for such services. The case there, as far as the plaintiff was concerned, went off on some agreement and plaintiff's counsel was not required to go through a long protracted trial. The nature and extent of the legal services rendered and what is a reasonable attorney's fee as provided for in the notes, would be $7,500 and the further sum as attorney's fee of $2,500 for other legal services rendered to the plaintiff which are lienable, making a total attorney's fee of $10,000 which are secured under the evidence.

The further conclusion is reached that the plaintiff has a lien upon the stocks, bonds and other securities obtained by the defendant, executor, from the testamentary trustees, and he is entitled to possession and the income and proceeds thereof for the payment of the sum of $66,998.16, found to be secured by, and a lien on the testamentary interest, being the total principal of the three notes referred to in the agreements and advances made by him to McDonald, Jr., since the annuities and income was stopped by the testamentary trustees, and interest on said notes and advances so made at the legal rate, and the balance of said claim, amounting to $12,632.98, shall be decreed to be unsecured and classed as a general creditor's claim.

■ The further objection of the defendant that plaintiff cannot intermingle in the present suit his claims individually,

Cummings, trustee, and the Cheney, Peterson and Thrasher items, as they must present their own claims, and suit brought separately. It is sufficient to say that the claims of Cheney, Peterson and Thrasher are for money advanced by the plaintiff under the trust contract to the parties, and therefore the plaintiff can include in this action his claims as trustee and also his individual claim under the procedure now recognized by the Federal Rules of Civil Procedure, rule 8, 28 U.S.C.A. following section 723c.

It further appears that there is attached to plaintiff's claim his report as trustee from the beginning of the trusteeship to August 20, 1935, and which was approved by McDonald, Jr., containing his receipts and disbursements, and it seems that the nature and scope of the present suit in which plaintiff prays for a decree allowing recovery against the executor and the estate for the amounts set forth and claimed in his claim filed with the executor and by reason thereof the court is now requested to adjudicate the trusteeship and refer it to the courts of Tennessee to consider in a proceeding to close the plaintiff's trusteeship. As to this request of the plaintiff, the court is of the opinion that the primary question for disposition in the present case is the adjudicating of the claim of the plaintiff in the sum of $79,631.14, and as to the closing up of the plaintiff's trusteeship, that is a matter to be determined in a proceeding in a proper jurisdiction.

A summary of the conclusions thus reached are:

(a)   That the plaintiff is entitled to a decree for $79,631.14 and accrued interest at the legal rate against the said executor and the estate of James McDonald, Jr.

(b)   That of said amount of $79,631.14, the sum of $66,998.16, plus $10,000 as attorney's fees are secured by the testamentary interest of James McDonald, Jr., and a lien thereon.

(c)   That the defendant as executor of the estate of McDonald, Jr., shall file with the clerk of the court and serve counsel for plaintiff with a copy, a full and complete statement of all securities, stocks, bonds and assets which were received from said testamentary trustees, Fulton Trust Company of New York, and Joseph Graydon, and of any other assets or securities into which the same may have been changed, upon which plaintiff has a lien, and that the same to be impounded with and delivered to the clerk of the court until the provisions of the decree are satisfied.

(d)   That the usual decree be entered for the foreclosure of plaintiff's said lien against all such assets and a sale thereof to satisfy that portion of plaintiff's claim amounting to $76,998.16 of which plaintiff has said lien.

(e)   That in the event the proceeds from the sale of said securities or other assets or property on which the plaintiff has a lien shall be insufficient to satisfy and discharge the secured amount, plaintiff may have judgment for such deficiency against the defendant as such executor and said estate.

Accordingly findings and decree will be made and entered to cover the conclusions thus expressed and plaintiff's costs.