BOARD OF EDUCATION OF VIOLA NORMAL SCHOOL, COMPLAIN-
ANT, APPELLEE, v. BOARD OF EDUCATION OF WARREN
COUNTY, DEFENDANT, APPELLANT.*

(Nashville, December Term, 1929.)

Opinion filed March 1, 1930.

W. G. McDonough, Willis & Davenport and Mercer & Johnson, for complainant, appellee.

Turner & Haston, for defendant, appellant.

Mr. Justice McKinney delivered the opinion of the Court.

By the bill filed herein the complainants seek to have a contract for the lease of a school building specifically performed. Such relief may be had in a proper case under the injunctive power of the chancery court. 4 Pomeroy's Equity Jurisprudence, section 1341.

From the bill it appears that complainants owned. a lot of ground in Viola upon which they had erected a brick school building consisting of an auditorium and ten classrooms.

The County Board of Education conducted a grammar school and a four year high school in said building for the scholastic year 1922-1923. Desiring to continue such school, the Board of Education, on May 8, 1923, entered into a written contract with complainants for the lease of said building for a period of ten years. A four year or first-class high school was thereafter maintained in said building for five years, when the defendants, successors to the board that executed the lease contract, passed a resolution reducing this school to a two year or second-class high school. The bill charges that the county court had made the necessary appropriation for continuing a first-class high school at Viola, and that the action of the board was arbitrary, capricious, without reason or excuse, and in violation of said contract.

By the demurrer interposed to the bill two questions are presented for determination. First. Does the contract provide for the maintenance of a first-class high school during the term of the lease? The consideration for the lease is thus stated in the contract:

"The said County Board of Education in consideration of the leasing of the premises herein set forth covenants and agrees with said Trustees. 1st to finish equipping said school building with all furniture, desks, heating fixtures and other equipment necessary to maintain a first class high school together with all the primary and intermediate grades, excepting the agriculture and domestic science departments.

"Second, to keep said property insured for a reasonable sum to protect the interest of said trustees, in event of loss to use said insurance money to repair old building, or build a new one same conditions as this contract calls for.

"Third, to establish and maintain in said building as complete a public school as the available funds for said purposes will from year to year permit."

It will be observed that defendants were to provide the necessary equipment "to maintain a first class high school together with all the primary and intermediate grades." Certainly the defendants would not have agreed to incur the expense of a first-class high school equipment if such a school was not to be conducted during the term of the lease. The contract also provides for the maintenance of a "complete public school." The word "complete" is here used in the sense of "entire;" it relates to quantity. Its meaning is that all or the entire public school curriculum shall be taught—which includes a first-class high school course. The public school system of this State embraces all grades from the elementary to a four year high school course, inclusive.

If the contract is not clear as to this question, any doubt as to its meaning is put at rest by the construction placed thereon by the parties. *Canton Cotton Mills* v. *Overall Co.*, 149 Tenn., 29; *State ex rel.* v. *Vanderbilt University*, 129 Tenn., 279.

The fact that the board maintained a first-class high school before the contract was entered into, and thereafter equipped the building and maintained such a school for five years, affords convincing evidence as to the intention of the parties.

Second. Is this contract binding on the successors in office of those who executed it?

In principle there is no distinction between the power of a county board and a municipal board to enter into such a contract. No question is made as to the power

of the board to lease a school building, but it is insisted that the term must be limited to that of the board.

■ Under the title "Municipal Corporations" the rule is thus stated in 43 Corpus Juris, 269:

"The police power of a municipal corporation, being a continuing one, is not exhausted by being once exercised on any subject falling within its scope. Where a continuing power is vested in the common council, one common council cannot by enactment of an ordinance or regulation on the subject defeat or materially interfere with the exercise of the power by succeeding councils. But, the powers of municipal corporations being of a dual nature, a distinction may be made between governmental and private or proprietary powers. With respect to governmental powers, their exercise is so limited that no action taken by the governing board is binding on its successor, whereas the business or proprietary powers are not subject to such limitations, and may be exercised in a way that will be binding on the municipal corporation after the board exercising such powers shall cease to exist."

In explanation of the text the author quotes, in a note, from *Omaha Water Co.* v. *Omaha*, 147 Fed., 1, 5, 77 C. C. A., 267, 12 L. R. A. (N. S.), 736 (App. Dism., 207 U. S., 584), as follows:

"In the exercise of powers which are strictly governmental or legislative the officers of a city are trustees for the public and they may make no grant or contract which will bind the municipality beyond the terms of their offices because they may not lawfully circumscribe the legislative powers of their successors. But in the exercise of the business powers of a city, the municipality and its officers are controlled by no such rule and they

may lawfully exercise these powers in the same way and in their exercise the city will be governed by the same rules which control a private individual or a business corporation under like circumstances.''

In 44 Corpus Juris, 87, it is further said:

''Under the general rule a municipal council may bind its successors in office by a contract for a term of years where such contract is made in the exercise of its proprietary or business powers.''

By way of illustration the author cites authorities in support of the right to grant franchises, lease city property, execute municipal bonds, contract with respect to street car fares and for light and water for the city, obtain the services of an architect, etc.

In 24 Ruling Case Law, 579, it is said:

''In the absence of an express or implied statutory limitation, a school board may enter into a contract to employ a teacher or any proper officer for a term extending beyond that of the board itself, and such contract if made in good faith and without fraudulent collusion binds the succeeding board.''

Upon the authorities cited, we hold that a county board of education, acting in good faith and without collusion, may lease a school building for a period extending beyond their term of office, but they cannot bind their successors by a contract which provides that a particular class of high school shall be taught. Our statutes expressly provide for three classes of high schools, and leave it to the discretion of the board as to which class shall be conducted at a particular place. In exercising such discretion, and in meeting conditions as they arise, the board acts in a governmental or legislative capacity.

The contract here involved is not void but voidable. The board can perform the contract or they can avoid it. They cannot, however, avoid the contract in part only. If they are not willing to maintain a first-class high school at Viola for the remainder of the term, then, as a condition precedent to being relieved of their obligation, they must restore the school building to the complainants.

Under the express terms of the contract the maintenance of a first-class high school is conditioned upon the availability of funds for that purpose. The bill charges, as heretofore stated, that such funds are available.

The chancellor very correctly declined to issue a mandatory injunction in advance of a hearing upon the merits. The decree of the chancellor will be affirmed, and the cause remanded for answer, with leave in their answer and at the hearing.
to defendants to rely upon any grounds of demurrer

The defendants will pay the costs of the appeal.