EASON v. HARDIN COUNTY BOARD OF EDUCATION.

(*Jackson,* April Term, 1943.)

Opinion filed May 29, 1943.

P. M. Harbert, of Savannah, for complainant.

Ross & Ross, of Savannah, for defendant.

Mr. Justice Neil delivered the opinion of the Court.

The complainant filed her original bill in the Chancery Court to recover salary alleged to be due upon a contract of employment as a teacher in the public schools of Hardin County for the school year 1937-1938. The defendants demurred to the bill, which was sustained by the Chancellor. Thereupon an appeal was prayed and granted to this Court. The grounds of the demurrer were not specific and the Court had to look to the briefs of counsel to determine the real issues raised by the demurrer. In an opinion prepared for the Court by the Chief Justice, it is said:

"It is argued by counsel for the Board of Education that the contract entered into between complainant and the Board in February, 1937, was not made in good faith. . . . Bad faith, however, does not appear from the bill. . . . If the contract was made in good faith, it was binding on the succeeding Board. *State ex rel. Brown* v. *Polk County,* 165 Tenn., 196, 54 S. W. (2d), 714."

The case was reversed and remanded for an answer upon the issue thus presented as well as other defenses that might be made touching the validity of the alleged contract. The defendants filed their answer and proof was taken. When the cause came on to be heard, the Chancellor dismissed the bill and complainant appealed to the Court of Appeals for the Western Division. That Court in a divided opinion, Anderson, J., dissenting, reversed the Chancellor and sustained the bill.

The cause is here on *certiorari.* There are a number of assignments of error. The determinative question, how-

ever, is whether or not the parties executed a binding and enforceable contract. In passing upon this issue we must necessarily consider the authority of the Board and other relative matters.

The validity of the contract is assailed on the ground that at the time the complainant was elected by the Board the members thereof were very hostile to the newly elected County Superintendent of Schools; that being threatened with ouster proceedings, the Board in February, 1937, elected all the teachers of the county without the recommendation of the Superintendent and before any budget had been prepared and submitted to the County Court; that many more teachers were elected than the county was entitled to under the law; that all the acts of the Board in thus electing teachers for the county schools showed the utmost bad faith.

The briefs of counsel are largely taken up with a discussion of the history of previous litigation in Hardin County involving an election contest for County Superintendent of Schools and ouster proceedings against members of the County School Board. The entire school system has evidently suffered from the constant political bickerings and warfare between factions, as well as personal animosities between board members and the Superintendent of Schools. The Board has refused to cooperate with the County Superintendent of Schools and the latter has been more or less antagonistic to the School Board. The complainant, who is no doubt an excellent woman, was a teacher during this unhappy and unfortunate period. She was not a party to the internecine strife that prevailed.

The Chancellor, in his finding of facts dismissing the bill, discusses all the events leading up to and attending

the making of the contract upon which the complainant relies. Among other things, he found that the "tentative budget" that was submitted by the new Board and adopted by the County Court the first of April, 1937, was not the real budget under which the school operated for the 1937-1938 school year. The Chancellor found that the action of the Board in electing teachers was done in bad faith and that the complainant did not have a valid and enforceable contract. This was and is now the contention of the defendant Board of Education.

It appears from the record that for the previous year Hardin County was allowed a total of about 140 teachers, based upon average daily attendance. At the called meeting of the Board in February 138 teachers were elected and later four more elected. For the school year of 1937-1938 the State Board of Education only allowed a total of 94 teachers for the county and this number was elected on August 31 and September 1st, after the County Court had approved the budget under which the schools were operated during that school year. The "tentative budget" that was submitted to the County Court at the April term was as follows, to-wit:

| Expenditures | $117,030 |
| County Income | 17,584. |

The budget that was submitted to the Court at the July term and adopted showed an income from all sources of $85,540. In the majority opinion of the Court of Appeals it is said:

"We do not think the facts relied upon warrant the finding of bad faith. There was an utter lack of cooperation between the Superintendent and the Board of Education, as we have set out in some detail above; but complainant was in no way responsible for this. She

had taught in the school at Saltillo for at least two years before this, and she testified that as far as she knew her work as a teacher had been entirely satisfactory. No one testified to the contrary. She applied for a position as teacher in 1935 and was re-elected without making a formal application in 1936 and again in 1937.''

Judge ANDERSON, in his dissenting opinion, holds:

''That the action of the County Court in adopting this tentative budget was only a formality and a provisional one at that; that it was understood by everyone concerned that it was not intended to be acted upon in the making of contracts, for the employment of teachers, or otherwise, but that it was to serve the sole purpose of undertaking to satisfy the State authorities and that final action with respect to expenditures for instruction and other expenses would be taken in the future, and this is exactly what was done.''

It was his opinion furthermore that the majority members of the Board did not really believe their action, in either of the meetings with respect to election of teachers, was final and that they thus acted in bad faith.

Manifestly, the Chancellor believed, and also Judge ANDERSON, that the majority members of the County Board of Education acted arbitrarily, capriciously, and contumaciously in electing teachers at the called meeting on February 16, 1937. We think it clearly appears from the record that when the County Board met on February 16th the thought that was uppermost in their minds was to do everything they possibly could to prevent the newly elected County Superintendent from having any voice whatever in the election of teachers for the county and to otherwise embarrass him in the performance of the duties of his office. His recommendations were ignored,

notwithstanding the provision of the statute that teachers are to be elected upon his recommendation. When the Board assembled on April 30th and again on May 26th after the adoption of the "tentative budget", it was for the purpose of ratifying what they had done on February 16th. All of the 140 teachers that were first elected on said date were re-elected. If this election constitutes a binding and enforceable contract in favor of each person named in the resolution, the result is that Hardin County is obligated to pay 140 teachers, whereas, under the law, it is entitled to only 94. We think the conclusion is fully warranted that the submission and approval of this "tentative budget" was a colorful effort to comply with the law and, if possible, to satisfy the requirements of the State Board of Education. It is certain that if the County Board and the Superintendent of County Schools failed to comply with Chapter 127, Public Acts of 1937, Hardin County would not receive any school funds from the State as provided for in the statute.

██ ██ We find that the State Commissioner of Education as late as May 20, 1937, wrote to the County School Superintendent as follows:

"I am writing to advise that Hardin County has not complied with the law, the same being Chapter 127 of the Public Acts of 1937, relative to the election of teachers, if it expects to participate in the Equalization Fund. . . . The State Department of Education is not inclined to temporize with a situation as unsatisfactory as that obtaining in Hardin County."

Up to this time the only budget that had been presented was the "tentative budget" showing expenditures amounting to $117,030 and only $17,584 of revenue in sight. Clearly, this was an impossible situation for the

public schools of the county. No reasonable person could think for a moment that 140 teachers would or could be paid for their services for eight months out of revenues totaling $17,584, not to mention other salaries to be paid bus drivers and other incidental expenses. The complainant in the instant case, as well as other teachers who had been elected, must have known that under Chapter 115, Pub. Acts of 1925, any member of the Board of Education voting to make debts beyond the legitimate income provided in the school budget for any school year is declared guilty of a misdemeanor. This Court considered the importance of a county school budget in its relation to teachers' contracts in *State ex rel. Brown* v. *Polk County*, 165 Tenn., 196, 197, 54 S. W. (2d), 714, 715. The Court said:

"In the absence of any express or implied statutory limitation, a school board may enter into a contract to employ a teacher or any proper officer for a term extending beyond that of the board itself, and such contract, if made in good faith and without fraudulent collusion, binds the succeeding board."

It was further stated:

"The limitation upon the spending power of the county board of education, coupled with the requirement of an annual budget to be made upon approval of the county court, imports a limitation upon the power of the board to make a binding contract of employment or other contract for expenditures of money beyond the annual budgets prescribed by the act, a requirement essential to reasonable management of county revenues and expenditures to avoid bankruptcy. This conclusion is supported, though not directly, by the case of *Morton* v. *Hancock County*, 161 Tenn., 324, 30 S. W. (2d), 250."

The case of *Davis et al.* v. *Lawson et al.*, 172 Tenn., 13, 108 S. W. (2d), 1095, 1096, is urged upon us as authority for validating teachers' contracts where they were elected prior to the adoption of a school budget by the County Court. In that case teachers had been elected by the Board on March 11th. On the 30th of March following, four members were ousted from office and the new Board undertook to rescind the action of the old Board. The question was made that their election was premature in that the County Court had not been presented with the school budget and "no provision had been made for raising revenue to meet same." The Court held that under Chapter 127, Acts of 1937, it was the duty of the Board of Education to elect teachers before May 1st, and that, "in view of provisions set forth in the act of 1937 regarding the State appropriation for teachers' salaries, it is apparent that no more than a 'tentative budget' could have been adopted before May 1st, the final date fixed for the election of teachers."

The questions raised in the instant case were not present in *Davis* v. *Lawson*, i. e., that the County Board was acting in bad faith in electing teachers; arbitrarily electing many more than the county was entitled to, and that a great many would have to be later eliminated. When this matter was brought to the attention of a member of the Board (and he was expressing the attitude of the majority), he was asked the question:

"If there were elected 138 teachers at the February 16th meeting and the State only allowed 96, what were you going to do with the other 42? A. We were going to have to eliminate them."

Again, when asked specifically about complainant's contract, six teachers having been elected for the Saltillo School and only four allowed for 1937-1938:

"Q. How would you know which two to eliminate? A. We would try and get them to agree on that together with the patrons and, if they would not, take the bull by the horns and eliminate two of them."

Now, manifestly, if the election of all these surplus teachers was a binding contract and enforceable against the county, the Board had no legal right to "eliminate" any of them. The 138 teachers that were elected in February and later re-elected on April 30th and on May 26th must have known that only 94 could actually be employed; that the number to be assigned to the various schools was determined by the State Superintendent of Schools, based upon average attendance, and the amount of their salaries was also determined by him. We are therefore constrained to hold that these alleged contracts were conditional and not enforceable unless a teacher was assigned to teach in one of the schools of the county. A teacher's contract differs from an ordinary contract between individuals. Whether or not it is enforceable against a county school board, or a county, is determined by the law under which the public schools are operated. Whether teachers are elected before or after the adoption of an annual budget, the number so elected must not exceed the number approved by the Commissioner of Education. If more teachers are elected than are allowed by law, then only those who are assigned to teaching duties, and whose salary is fixed by the Commissioner of Education pursuant to Sec. 3(a), Acts of 1937, chap. 127, will be allowed a recovery against the County School Board for services rendered.

■■ Counsel for complainant earnestly contends that this Court upon a former appeal held that the action of the County Board of Education on April 30th, in ratifying

its action of February 16th, "validated" the contract. What the Court said in its memorandum opinion was:

"If at that time a budget had been adopted justifying the February contract, we think that the ratification on April 30th would have given validity to the contract, provided the Board was qualified to act."

The answer to the foregoing contention is that, conceding that the Board was qualified to act, there was no budget on April 30th justifying the February contract. The Court recognized then, as it does now, that there must be a "limitation upon the spending power of the County Board of Education." The wisdom of such a policy is clearly set forth in *State ex rel. Brown* v. *Polk County, supra.* It is essential "to avoid bankruptcy." Moreover, where it appears, as it does in the instant case, that the County Board ignored the recommendations of the County School Superintendent and elected a far greater number of teachers than the law allowed, knowing that teaching duties could not be assigned to many of them, this alone was evidence of bad faith.

The motion of the complainant to affirm the judgment of the Court of Appeals on the ground that the Board of School Commissioners had not authorized any defense in the case is overruled.

We are therefore constrained to reverse the Court of Appeals and affirm the decree of the Chancellor.