Della Richard Rodgers

*v.*

Southern Newspapers, Inc., et al.

379 S.W.2d 797

(*Knoxville,* September Term, 1963.)

Opinion filed June 4, 1964.

336

GOINS, GAMMON, BAKER & ROBINSON, Chattanooga, J. Y.
ELLIOTT, Cleveland, for appellant.

MAYFIELD & MAYFIELD, Cleveland, for appellees.

MR. CHIEF JUSTICE BURNETT delivered the opinion of
the Court.

This suit was filed asking the court to declare the rights
and liabilities of the parties on a certain contract of
employment and for a money judgment for salaries al-
ready accrued plus certain installments which would con-
tinue to accrue provided the appellant was successful in
her contentions.

The bill was dismissed on demurrer. The Chancellor held that she had no contractual rights to the salary.

Will L. Rodgers, former editor and publisher of a newspaper in Cleveland, Tennessee, sold that paper on July 31, 1946, to certain corporations later succeeded by the appellees in this present suit. At the time this paper was sold Rodgers entered into a twelve year contract of employment with the purchasers covering a period from July 31, 1946, to August 1, 1958.

This employment contract specified the services to be rendered by Rodgers as consultant and director and obligated the newspaper company to pay him therefor $57,500.00, at the rate of $400.00 per month throughout the twelve year period.

In April, 1953, this twelve year contract was by mutual consent amended so as to increase the monthy payment to Rodgers from $400.00 to $525.00 per month for the remaining time the original contract had to run. This amendment provided that the original contract "shall remain in full force and effect."

On July 20, 1955, Rodgers married the appellant, Della Richard Rodgers. The day following this marriage on July 21, 1955, Rodgers assigned all his salaries due him under the twelve year contract, as amended, to his wife in the event he should die prior to the expiration date, July 31, 1958. This assignment was held valid and the newspaper company has paid her the amount due under such an assignment.

Several months after his marriage to the appellant, Della Richard Rodgers, on November 25, 1955, an amended employment contract was executed by Rodgers, his wife, Della Richard Rodgers, and the newspaper com-

pany. It is under this contract that the present suit is brought. At the time this last contract was entered into (November 25, 1955) the original contract had about three years to run. This new, or amended, contract entered into in 1955, provided that it should come into operation on August 1, 1958, or on the expiration date of the original twelve year contract.

On July 29, 1957, Will L. Rodgers died. His death was about a year before the contract here being considered was to come into operation. A declaratory action was filed by Rodgers' executor, resulting in the court declaring the rights generally of the parties and the splitting of the action into different causes, of which this is one.

The contract under consideration, that is the one entered into on November 25, 1955, is filed as Exhibit A to this bill. We have read it a number of times. In its preamble it is recited that it is a continuation of the original employment contract, which had not then expired. It expressed an executory agreement to come into effect on August 1, 1958, a date three years in the future, and the date the original contract was to expire. It bound the parties for ten years from the expiration date of the original contract, that is, August 1, 1958, obligating the newspaper company to pay, and conferring upon Rodgers the right to receive $18,000.00 at the rate of $150.00 a month for ten years.

In the third paragraph of this contract from the end, after providing for the period it was to run, the amount to be paid and how paid, etc., this provision is contained:

"Should party of the first part die before the ending of the term of payments provided for in this contract then the remaining payments shall be made to his wife,

Della Richard Rodgers, and in such event she shall substitute in the service agreed to herein and be paid for such remaining period.''

To this bill, as above said, the newspaper demurred. The basis of this demurrer is that the bill shows on its face that the suit was brought by the widow of Rodgers upon a contract for personal services which were to commence on August 1, 1958, and that Rodgers had died prior to that time ''before the commencing of the term of the contract.''

''That the bill thus shows upon its face that there could be no substitution, that there were no remaining payments and/or that there was a failure of consideration and an impossibility for the contract to be carried out according to its terms.''

The Chancellor sustained this demurrer, dismissing this action, which has been seasonably appealed, able briefs filed and arguments heard. After debating this matter in our mind several days, reading and re-reading the pleadings, authorities cited and others we have looked into, we are now in a position to determine the matter.

In sustaining this demurrer the Chancellor held:

''That the contract in question was terminated by the death of Mr. Rodgers and that the 'remaining payments' to complainant (Della Richard Rodgers) contemplated by the contract for the 'remaining period' is without force or effect.''

Of course, this holding is based primarily on the general proposition that upon the death of one of the contracting parties to a personal service contract this voids the contract because it is impossible for the per-

forming party, he being dead, to complete his services that he agreed to. This statement, we have just made, is probably best made by the writer of 12 Am.Jur., Contracts, sec. 375, at page 951, where the writer says:

"Where distinctly personal services, requiring peculiar skill, are to be rendered by each of the contracting parties as inducements to the contract, the death of either of the parties is the death of the contract."

Of course, this is the law everywhere insofar as we know. A similar holding and statement is made by this Court in *Greenwood v. National Biscuit Company,* 175 Tenn. 302, 134 S.W.2d 149. There though it is noted and well recognized that there are exceptions to such a rule. Such an exception is clearly applicable where the services are of such character that they may as well be performed by one or another, or where the evidence shows that performance by others was contemplated. The California court in *Howard v. Adams,* 16 Cal.2d 253, 105 P.2d 971, 130 A.L.R. 1003, very clearly stated the proposition we are now talking about in this language:

"The rule, that an executory contract of a strictly personal nature is terminated by the death of the party by whom the personal service is to be performed, is not applicable where the service is of such a character that it may as well be performed by another, or where the contract, by its terms, shows that performance by others was contemplated." (Citing authorities among which is 12 Am.Jur., supra.)

See also Restatement of the Law, Contracts, sec. 459.

■■ When we come to analyze the contract in question here, after reading it and re-reading it many times,

as said above, it is shown clearly by the portions of the contract we copied that it was contemplated by the parties when this contract was entered into that in the event of the death of Will Rodgers Mrs. Rodgers, the appellant here, might succeed him and do the duties that he had agreed to do. Of course, in the construction of contracts we have to view the contract from all four corners and try, when the matter is on demurrer as here, to determine what the intention of the parties was. It is clear to us that under this contract the intention was that provided Mr. Rodgers died, Mrs. Rodgers could succeed him in carrying out these personal duties: It is elementary that a demurrer as here admits the truth of the facts well pleaded in the petition and all reasonable conclusions to be drawn therefrom. Of course, this demurrer does not admit conclusions of the pleader or anything of that kind, but it does admit the facts of this contract as entered into by these parties in the language we have quoted above, which to us clearly means that the parties who entered into this contract considered the fact that Mr. Rodgers might die and Mrs. Rodgers could complete this work. In other words, it was not just a straight contract with Mr. Rodgers which would die upon his death, but the parties anticipated that such might happen and provided that Mrs. Rodgers might succeed to this employment and the benefits of this contract. They, the newspapers, agreed she might do the things contemplated of Mr. Rodgers in the event of his death.

■ It is very ably argued that this death having occurred prior to the commencement of this contract and certain language in the contract about additional payments to be made to Mrs. Rodgers, etc., had never come about because the contract had never started, but to our

mind the contract with the parties was, under a demurrer as here, made executory some two or three years prior to the commencement of this contract and we certainly have to conclude that that is what the parties intended and meant—that this contract should go on and Mrs. Rodgers should carry on these duties and be entitled to the payments as provided in the contract.

■ ■ There is ample consideration in this contract because of the mutual promises of one to another. This in itself would constitute a sufficient consideration. 17 C.J.S. Contracts sec 97, page 781; *Dark Tobacco Growers' Co-op Ass'n v. Mason,* 150 Tenn. 228, at 251, 263 S.W. 60. Here were reciprocal promises of the parties to this contract, Rodgers agreeing to do these things that he had been doing for them over the years, the newspaper company agreeing to pay him for this, and then it was provided if he died his widow would continue to do his work. It seems to us there is ample consideration in this contract.

For reasons herein expressed the decree of the Chancellor must be reversed and the cause remanded for further proceedings consistent with this opinion.