# TOM FULTON, Complainant-Appellee, v. TENNESSEE WALKING HORSE BREEDERS' ASSOCIATION OF AMERICA, Defendant-Appellant.—476 S.W.2d 644

Middle Section. January 8, 1971.

Rehearing Denied February 5, 1971.

Certiorari Denied by Supreme Court February 2, 1972.

572

Charles Baker, Jr., and Clarence Evans, of Farris, Evans & Evans, Nashville, for complainant-appellee.

Bigham & Binkley, Lewisburg, Hooker, Keeble, Dodson & Harris, Nashville, for defendant-appellant.

PURYEAR, J. The complainant, Tom Fulton, filed the original bill in this case against defendant, Tennessee Walking Horse Breeders' Association of America, a general welfare corporation, seeking to recover damages for breach of a contract of employment.

In said bill the complainant alleged that on May 9, 1964, he was serving as executive secretary of the defendant pursuant to a contract of employment which would have expired in May, 1966; that on May 9, 1964, complainant and defendant entered into another contract by which complainant was employed by defendant for an additional period of ten years to begin at the end of his then present term of employment and extend until May, 1976; that complainant continued to serve as executive secretary of defendant until on or about December 15, 1966, at which time the defendant breached said contract of employment and discharged him from its employment, effective December 31, 1966.

The bill prays for process and a judgment or decree against the defendant in the amount of $120,000.00 for the breach of said contract of employment and for general relief.

To this bill, the defendant first filed a demurrer, which demurrer was overruled by the Chancellor, and the defendant was given the right to rely upon said demurrer in its answer.

Thereafter, defendant filed its answer to said bill, relying therein upon its demurrer, and also pleading the following defenses:

That the defendant did not enter into a valid contract of employment with the complainant for a period of ten years from 1966 as alleged in the bill; lack of consideration for the alleged contract, vagueness and uncertainty of said alleged contract; reliance upon the statute for prevention of frauds and perjuries; invalidity of said contract because of ultra vires action of defendant's Board of Directors and justification for termination of complainant's employment.

The case was tried before the Chancellor upon oral testimony and documentary evidence, as a result of which trial the Chancellor rendered a decree on October 21, 1969, finding as a fact that defendant had breached a ten year contract of employment with the complainant, and further ordering and adjudicating the issues between the parties as follows:

". . . that the Complainant has suffered as damages resulting from the said breach, his continued loss of wages, and that the Complainant is at this time entitled to recover said damages from the Defendant through the date of the conclusion of the oral hearing in this cause, October 21, 1969; and that in the absence of any evidence whatsoever pertaining to mitigation of

damages, the amount of the damages is measured by Complainant's salary rate under the contract, i. e., at $12,000 per year; and that this Court should award same and has jurisdiction so to do, all without prejudice to the Complainant's right hereafter to file a subsequent suit or successive suits for such damages as he may hereafter suffer as a result of the aforesaid breach of contract, subject to such matters if any as Defendant may show in such subsequent suit or suits in mitigation of damages."

\* \* \* \* \* \*

"(2) That the Complainant is at this time entitled to recover damages from the Defendant from January 1, 1967, to the present time, calculated at $12,000 annually, and that the amount of the said damages is $33,667, which amount is now awarded.

(3) That the Complainant's right to bring suit to recover additional damages arising from the breach of the said employment contract for periods subsequent to October 21, 1969, shall not be prejudiced by this present award." (Tech. Rec. pp. 37-38)

After the rendition of said decree on October 21, 1969, both parties filed petitions to rehear, upon consideration of which the Chancellor denied the defendant's petition to rehear and sustained the complainant's petition to rehear on January 1, 1970, and then made the following adjudication of the issues between the parties:

"(2) The Petition for Reconsideration filed on behalf of Complainant is granted, and the decree of the Court entered on October 21, 1969, wherein Complainant was awarded judgment in the amount of $33,667 is set aside.

(3) Complainant is entitled to recover damages from the Defendant for his loss of salary in the total amount of $113,000 for the period from January 1, 1967 through May 30, 1976, with said amount reduced to present value as of February 1, 1967, that is, to the amount of $85,812.20, together with interest at six per cent per annum on the said amount of $85,812.20 from February 1, 1967 until the payment of the said amount by Defendant to Complainant, and judgment is hereby so awarded for said amount and interest.

(4) This judgment shall be in full satisfaction of all of Complainant's rights under the contract of employment, and Complainant shall not have any right to recover any additional damages in any subsequent suit." (Tech.Rec. p. 58)

From the foregoing decree the defendant has prayed and perfected its appeal to this Court and filed five assignments of error as follows:

I

"The Court below erred in holding that there was a valid employment contract between Appellant and Appellee by reason that the purported ten year employment contract is against the public policy of the State of Tennessee and the provisions of The Tennessee Code Annotated, Section 47-1112.

II

The Court below erred in holding that there was a valid employment contract between Appellant and Appellee beginning in May of 1966 for the reason that

such a contract was *ultra vires* and beyond power of the Board of Directors of Appellant under the by-laws of Appellant corporation.

## III

The Court below erred in holding that there was a valid employment contract between Appellant and Appellee by reason that the resolution of the Board of Directors which purportedly forms the basis for said contract is not supported by a consideration, being totally devoid of any reference to the amount of compensation to be paid and, therefore, there is no valid, enforceable contract.

## IV

The Court below erred in holding that the Appellant after the Appellee breached the alleged employment contract, waived its right to terminate Appellee's employment because of said breach of the alleged employment contract.

## V

The Court below erred in granting Appellee damages which were excessive and not supported by the evidence presented to the Court."

The only witnesses who testified upon trial of the case were the complainant, Tom Fulton, Doctor William V. Garnier, a former member of the defendant's Board of Directors, and Mr. S. W. Beech, Jr., a former president of the defendant association, and who was a member of its Board of Directors at the time of trial.

Thirty-one written and printed documents were introduced as exhibits, which documents include copies of the charter and by-laws of defendant, and several copies of resolutions of its Board of Directors.

The first paragraph of Article VIII of the defendant's by-laws provide for election of officers of the corporation in the following language:

"The officers of the association shall be a President, a First Vice-President, a Second Vice-President, and a Secretary-Treasurer. All such officers shall be elected (excepting Secretary-Treasurer who shall be appointed by the Board of Directors) at an annual meeting of this association and shall serve for a term of two (2) years from the date of their election. This amendment shall be effective immediately and shall apply not only to all officers elected at the 1960 annual meeting who shall serve for a period of two (2) years from the date of their election but also to all officers subsequently elected." (Tech.Rec. p. 24)

No provision is made in the defendant's charter or by-laws for any such an officer as executive secretary.

The complainant testified that he was first employed by defendant as executive secretary in 1958 and continued to be employed in that capacity until 1964; that in May, 1963, his salary was increased from $9,000.00 per year to $12,000.00 per year.

He testified that in 1964 he was offered another position at a salary of more than the defendant was paying him at the time and he discussed this matter with John

Amos, then chairman of defendant's Board of Directors, and explained to Mr. Amos that he was interested in job security. Specifically, the complainant's testimony on this particular phase of the matter was as follows:

"Q. And in 1964, tell us briefly whether you took up with any officers of the Association the question of some job security or tenure, and why you did it?

A. Well, I discussed it with Mr. Amos.

Q. Who is he?

A. He was the Chairman of the Board of the Association at that time, Mr. John Amos.

Q. And what did you discuss with him?

A. A tenure of—or—of office, or some security. I had been offered another job with more money, and—and—

Q. Yes, sir.

A. —a longer term contract.

Q. Yes, sir. And that job was where?

A. In Cincinnati, Ohio.

Q. And was it in the horse business?

A. Yes, sir.

Q. And did you report this then to Mr. Amos?

A. Yes, sir.

Q. And what discussion followed, and what happened in the Board meeting when this was taken up?

A. Well, the Board extended me a contract for 10 years at the expiration of the term of which I was serving.

Q. And did you explain to the Board your concern with some security in your job? And—

A. Well, I felt like that I'd devoted 14 years of my life to this Breeders Association, and they had no pension benefit or no retirement income or anything at all, and I wasn't getting any younger, and I—Mr. Amos was of the opinion that I should be offered some kind of inducement to stay, and some security, so I wouldn't be hunting another job or considering taking another job. The Board felt like that I had done a good job with the Association, and the members felt like I had. They offered me congratulations at most—every annual meeting that we had on the job that I was doing.''
(B. of E. pp. 21, 22, 23)

He further testified that in May, 1964, the defendant, through its Board of Directors, entered into a ten year contract of employment with him to begin at the expiration of his then present two year term in May, 1966; that in May, 1965, his salary was increased by defendant's Board of Directors to $13,500.00 per year.

The resolution of defendant's Board of Directors by which complainant alleges the defendant entered into a ten year contract of employment with him was adopted on May 9, 1964, and is filed as Exhibit 13, and the relevant portion thereof is as follows:

"Thereupon, Dr. Garnier requested Mr. Fulton leave the room and have a discussion as to a longer and more secure term of the Executive Secretary, Mr. Fulton, and at such time suggested a ten-year term as a security measure. After discussion, motion was made by Dr. Garnier, duly seconded by Mr. Amos and unanimously carried

> THAT, the Executive Secretary, H. Tom Fulton, be employed for a term of an additional ten (10) years; such term to be extended from the expiration of his present term, ending in 1966, until the year 1976; and further, that the Board and Mr. Fulton both are to be bound by such action.

Mr. Fulton was then recalled to the meeting and was informed as to the above action taken by the Board, and he thereupon accepted the stated proposal in the motion, and expressed his gratitude for the confidence placed in him." (Exhibit 13)

At this time, S. W. Beech, Jr., was President and Mrs. Marianne Hawkins was Secretary-Treasurer and these two officers signed the resolution.

Complainant further testified that in December, 1966, the position of executive secretary was abolished by defendant's Board of Directors and he was informed that his employment would terminate on December 31, 1966; that he was ready, willing and able to continue to perform the contract of employment and that he was in good health. He testified that at the time of trial on October 20, 1969, he was 63 years of age.

Upon cross-examination complainant admitted that on or about April 2, 1963, he wrote the following letter to Mr. Paul Raines of Memphis, Tennessee:

"April 2, 1963

Mr. Paul Raines
3483 Covington Pike
Memphis 8, Tenn.

Dear Paul:

I am happy to enclose a guest card for you to Judge the Sacramento show, May 11th through the 18th. I don't envy you the job as my experience with the California exhibitors has been that they all want to win the Blue Ribbon, and one of them is happy when he wins it, and the rest of them are bitching and hollering about 'the crooked judge'. They have no conception of what form and gaits are in a Tennessee Walking Horse. They just ride as fast as a horse will go, jumping and running around the turns is not supposed to count against the horse, and their flat-foot in most instances is a slow jiggle, but I am wishing you all the luck in the world and hope you have a nice time out there.

Kindest personal regards, I remain

Yours very truly,
   /s/ Tom
H. TOM FULTON
Executive Secretary
HTF: mhh
Encl."

(Exhibit 26)

Complainant admitted that this letter was written by him as executive secretary of the association upon its official stationery; that as result of writing this letter, Mr. Mitchell McClure of California, a member of Tennessee Walking Horse Breeders' Association, made a complaint against complainant and a date was set for the defendant's Board of Directors to hear such complaint, but McClure failed to appear at the hearing and the charges against complainant which were preferred by McClure were dismissed and the defendant's Board of Directors imposed a penalty on McClure for failing to appear at such hearing, which penalty consisted of suspension of membership until such time as McClure's failure to appear was satisfactorily explained.

The resolution of defendant's Board of Directors by which McClure was suspended from membership is dated July 13, 1963, and filed as exhibit 12 and the relevant portion thereof is as follows:

"The President thereupon declared a quorum, and as the first order of business, turned the meeting over to the Chairman, Mr. Amos, to present the matter at hand to the Board. There was general discussion as to the complaint made by R. Mitch McClure against the officer of the Association, H. Tom Fulton. All correspondence relative to same was reviewed by Mr. Amos and notification of Mr. McClure that his hearing was to be held on stated date and time. Mr. McClure was not present. He had demanded a hearing date be set in September, during Celebration, at his convenience. After full discussion, Dr. Garnier moved:

THAT, the complaint against Mr. Fulton be dismissed. and THAT, the Board of Directors, being

in executive session to hear the complaint of R. Mitchell McClure of Los Angeles, California, made against an officer of this Association; the Board has convened at the office of the Association for the purpose of hearing Mr. McClure's complaint; and further, that he, having been duly notified to appear and failed to do so; I, therefore, move that as a penalty for his failure to appear, the services of this Association be denied to Mr. McClure until such time as he appears before the Board and explains his actions.

Motion was duly seconded by Mr. Amos, and upon vote taken, ayes carried, with Mr. Ezell holding the only negative vote.

Thereupon, the Secretary was instructed to notify Mr. McClure of the action taken by the Board at this meeting and notice to be mailed by Registered mail, return receipt requested, to addressee only, and Via Air Mail.

At this time, Mr. Amos asked that the following statement by him go into the record: To oppose any hearing to be set during the Celebration or any other date set at Mr. McClure's pleasure; but the Board of Directors will be willing to meet and hold such hearing, only at the pleasure and convenience of the members of the Board." (Exhibit 12)

The next witness, Doctor William V. Garnier, testified that the letter from complainant to Raines had been ill-advised and that he thought the matter was handled poorly from the beginning to the end and that he would not have made the motion to suspend McClure if he had known McClure had notified the president, S. W. Beech,

Jr., that he could not attend the hearing because of illness. Doctor Garnier's testimony as to his reason for sponsoring the resolution for a ten year employment contract with complainant is as follows:

"Q. And did you have anything to do with a resolution or an action giving Mr. Fulton any job security with the Association?

A. I was. I was very active in that. And whether I made the motion or not, I don't know, but I remember John Amos saying that Tom Fulton was a dedicated man, and we couldn't afford to lose him, and that we ought to tie him up for as long as we could, reasonably could, and—because we—we had come a long ways with the Breeders Association. I think when I first became a member of that Board, the first thing that came to my attention was an item of thirty-six cents for paper clips, and the Board had to okay all those expense items and things like that, and we gradually got on a businesslike basis, I thought, and we had somebody running the office, and then we began to think that we should think more about selling the horse to various parts of the country, we needed an outside representative. Now these are the things that were talked on the outside among we directors and also on the inside, and Mr.—Mr. Amos, like I say, said Tom was a dedicated man, and be a shame to lose him, and I agreed with him because I thought he had done a stupendous job in helping sell the walker." (B. of E. pp. 100, 101)

The next witness, S. W. Beech, Jr., testified that he was president of the association at the time of adoption of the resolution of May 9, 1964, providing for com-

plainant's employment for a period of ten years and he described the proceedings which led to the adoption of this resolution as follows:

"Q. Tell the Court what you remember about the discussion of the Board about the adoption of that resolution?

A. Well, Dr. Garnier got up and made a little speech about Mr. Fulton, asked him to leave the room and made a little speech about Mr. Fulton, that he has worked here and I believe was a dedicated man and there was a possibility that the Board could be changed around. In other words, the same ones wouldn't be on the Board so he felt like we ought to raise that to ten years.

Q. Who presided over that meeting, Mr. Beech?

A. Well, I was the President but Mr. Amos was Chairman of the Board, so Amos usually presided.

Q. Do you remember whether he presided on that occasion?

A. Yes, he was there and presided." (B. of E. p. 122)

We will consider the first and second assignments together, since the basic thrust of them is to the effect that a ten year contract of employment was beyond the legal authority of defendant's Board of Directors.

■ Defendant contends that such a contract made by the defendant's Board of Directors is against public pol-

icy and in violation of T.C.A. Section 48-1112, which was in effect on May 9, 1964, as follows:

> "48-1112. *Terms of officers.*—The term of officers may be fixed by the by-laws, the said term not, however, to exceed three (3) years. All officers hold office until their successors are duly elected and qualified."

The foregoing Code Section was applicable only to corporate officers and the evidence in this case conclusively shows that the executive secretary was not an officer of the association, but was merely an employee and his powers and duties were necessarily limited to those assigned to him by the directors.

Defendant cites the following quotation from Fletcher on Corporations:

> "Directors may hire employees for a period extending beyond the term of office unless they are forbidden to do so expressly or by implication." Supra, Vol. 2, Sec. 714

We do not consider a contract such as the one involved here as being in violation of public policy simply because it covers a period of time which is beyond the tenure of the board of directors.

On the contrary, our cases seem to refute this argument. In State ex rel. J. B. Brown v. Polk County (1932), 165 Tenn. 196, 54 S.W.2d 714, wherein a school principal successfully recovered for breach of his five year employment contract, the Court held as follows:

"In the absence of any express or implied statutory limitation, a school board may enter into a contract to employ a teacher or any proper officer for a term extending beyond that of the board itself, and such contract, if made in good faith and without fraudulent collusion, binds the succeeding board. 24 R.C.L., 579; Board of Education of Viola Normal School v. Board of Education of Warren County, 160 Tenn. 351, 24 S.W.2d 889." Supra, pp. 198, 199, 54 S.W.2d p. 715.

To the same effect is Eason v. Hardin County Board of Education (1943), 180 Tenn. 147, 172 S.W.2d 816.

We consider the above cited Tennessee cases to be con-controlling and determinative rather than the cases from other jurisdictions cited in the defendant's brief.

Therefore, the first and second assignments are respectfully overruled.

In support of assignment number three, defendant's counsel cite 56 C.J.S. Master and Servant sec. 6c, p. 68, wherein the general rule is stated as follows:

"It is essential to the validity of a contract of employment that the nature and the extent of its obligations be certain."

However, this statement of the general rule in C.J.S. is followed by this language:

"A contract is not necessarily uncertain, however because some of its terms must be fixed at a future time or by subsequent events, and a contract is sufficiently certain if it may be rendered certain or has been ren-

dered certain by the performance of the parties under it. As a general rule, it is essential that the contract specify the nature and extent of the services to be performed, the place where, and the person to whom, rendered, and the compensation paid, and a contract which does not specify any of the essential terms is unenforceable and void." 56 C.J.S. Master & Servant sec. 6c, pp. 68, 69.

Defendant also cites Lyons v. Jones (1938), 22 Tenn. App. 262, 121 S.W.2d 125, wherein this Court held that a contract was unenforceable because it was too vague and indefinite.

Defendant also cites several other cases, but a discussion of all of these cases and others reported in Tennessee, wherein some contracts have been held to be too vague and indefinite to be enforceable and other contracts to be sufficiently clear and definite as to be capable of enforcement, would unnecessarily prolong this opinion and serve no useful purpose because each of these cases was decided upon its own facts and circumstances.

■ Complainant's position on the question presented by this assignment is supported by the exception to the parol evidence rule to the effect that where a written contract does not purport to contain all of the stipulations between the parties, parol evidence is admissible to show such additional stipulations as are not inconsistent with the writing. See cases cited in West's Tennessee Digest, Vol. 9, p. 664, "Evidence", 417(9).

Complainant testified that when the ten year contract of employment was made, his salary was $12,000.00 per year.

■ Where an employee's contract of employment is renewed or extended by his employer, without reference to compensation, there arises a rebuttable presumption that the employer will pay for the employee's services the same compensation as is then being paid for such services.

By resolution dated May 11, 1963, complainant's salary was fixed at $12,000.00 per year. It was later raised by the Board of Directors to $13,500.00 per year, but complainant is only insisting that the basis for recovery is $12,000.00 per year as fixed by the resolution of May 11, 1963, a copy of which is filed as exhibit number eleven.

■ We find no merit in the defendant's insistence that the employment contract was not supported by any consideration.

The resolution by which the contract was made contains the following language: "*. . . . and further, that the Board and Mr. Fulton are to be bound by such action.*"

We construe this to mean that the defendant intended to employ complainant as executive secretary for ten years and complainant agreed to perform the services which were required of him as executive secretary for said period of ten years.

This is a mutual promise, the counterpart of which is usually included in all contracts of employment, and no additional consideration is required to support such a contract. Rodgers v. Southern Newspapers, Inc., (1964), 214 Tenn. 335, 379 S.W.2d 797; 17 C.J.S. Contracts sec. 97, p. 781.

For the foregoing reasons, the third assignment of error is respectfully overruled.

In the fourth assignment, defendant assails the action of the Chancellor in holding, that after complainant breached his employment contract, the defendant waived its right to terminate such contract because of complainant's breach thereof.

It is earnestly insisted by defendant that as a result of complainant writing the letter to Mr. Raines, which is heretofore quoted, the defendant was sued in a United States District Court in California, and sustained a loss of $42,489.86 in damages, litigation expenses and attorneys' fees, all of which defendant contends was the result of complainant's letter to Raines.

In his oral opinion, which is made a part of the bill of exceptions, the Chancellor disposed of this contention in the following language:

"So, in my judgment, there would be no question about this being a breach of his duty and very likely would be justified or it might be such a breach as it would have justified the Association in discharging him from his position. But, of course, the Association did not do that; it kept him in its employ in the same capacity for some two or three years, during which time it gave him this ten year contract that is in litigation and also increased his salary. So, I think that the Association waived any breach, due to the contract, on the part of Mr. Fulton." (B. of E. p. 144)

Although there is some question in our minds about whether the suit in United States District Court

against the defendant should be attributed to complainant's letter to Raines or attributed to the hasty action of defendant's Board of Directors in suspending McClure from membership, or to both, we concur in the Chancellor's finding that the defendant waived its right to rely upon the complainant's writing of the letter in question as a reason for discharging him and terminating his contract of employment.

In support of this assignment defendant cites Little v. Federal Container Corporation (1969), 61 Tenn.App., 26, 452 S.W.2d 875. In that case this Court held that an employer has the right to discharge an employee at any time for just cause and the fact that the employer bears with the incompetency or neglect of such employee for a time does not estop the employer from discharging the employee for such incompetency *if it continues*. (Emphasis ours.)

The factual situation in that case is not analogous to the situation in the instant case and the reasoning in the Little case is not applicable here because the complainant's action in writing the letter to Raines was not a continuing action, but was, instead, a non-recurring act.

As the Chancellor stated in his opinion, the evidence conclusively shows that after this act was committed by the complainant, the defendant continued to employ him and the ten year contract was also made after the letter was written and the contents thereof made known to the defendant's Board of Directors.

Therefore, we find no merit in the fourth assignment and it is respectfully overruled.

The fifth and last assignment to the effect that the trial Court erred in granting complainant damages which were excessive and not supported by the evidence, presents the question which has caused us more concern than any others presented on this appeal.

Counsel for defendant argue that, in determining the amount to be awarded complainant, the trial Court should have considered:

(1) Probability that complainant would obtain future employment and; (2) uncertainty of life and probability that complainant would be physically or mentally incapable of completing the term of the contract.

■ Counsel refer us to the rule that the complainant's right of action in this case is not for unearned salary, but for damages for breach of contract, and salary is only a measure of damage, citing cases, including Menihan Co. v. Hopkins (1913), 129 Tenn. 24, 164 S.W. 775, and International Correspondence School v. Crabtree (1931), 162 Tenn. 70, 34 S.W.2d 447.

■ Counsel have correctly stated the rule for measuring the amount of damages to be awarded in a case such as this and it is also correct, as counsel insist in their brief, that the Court must consider any matter which comes to its attention which would mitigate the damages to be awarded to complainant.

The Chancellor was well aware of this rule to be followed in determining the amount to be awarded, as shown by the following language in the final decree:

". . . *and that in the absence of any evidence whatsoever pertaining to mitigation of damages,* the amount of the damages is measured by Complainant's salary rate, under the contract, i. e., at $12,000 per year, subject to an appropriate adjustment to reduce to present value as of February 1, 1967 the amount of the future salary payments lost by Complainant which would have been paid under the contract; . . ." (Emphasis ours.) (Tech.Rec. pp. 57-58)

When we look to the record in the case we conclude, as the Chancellor did, that there is absolutely no evidence which can be considered in mitigation of damages.

In International Correspondence School vs. Crabtree supra, the Supreme Court said that where an employment contract is involved the general rule is "that the defendant has the onus of establishing matters asserted by him in mitigation or reduction of amount of plaintiff's damages."

In Polk v. Torrence (1966), 218 Tenn. 680, 405 S.W.2d 575, the Supreme Court said that it is the general rule that where one claims a setoff the burden of establishing the right of this setoff is upon the one claiming it.

This rule in Tennessee was also stated and followed by the Sixth Circuit Court of Appeals in Rolfe et al. v. County Board of Education of Lincoln County, Tennessee (1968), 391 F.2d 77.

This being the rule, the Chancellor could not have mitigated the damages because of any probability that

the complainant would obtain future employment or that he would be physically or mentally incapable of completing the term of the contract. For the same reason, neither can this Court mitigate such damages.

■ Complainant testified that, at the time of trial, he was 63 years of age and this means, of course, that he was approximately 60 years of age at the time the employment contract was breached by defendant. But even if he had been 63 years of age at the time the contract was breached, his life expectancy would have been more than the unexpired period of the contract.

By consulting the mortality tables in Vol. 1, Tennessee Code Annotated, we find that, according to these various tables, the life expectancy for a white male, aged 63 years, ranges from a minimum of 11.08 years to a maximum of 15.62 years.

We have used the six percent interest tables appearing on page 1172 of Volume 1, Tennessee Code Annotated, for the purpose of determining whether or not the sum of $85,812.20, awarded by the Chancellor, was in excess of the then present value of an annuity of $12,000.00 per year for the unexpired period of the contract of employment.

It appears to us that the Chancellor must have followed these same guidelines and therefore, he correctly determined the then present value of the salary which complainant would have earned over the unexpired period of the contract, had it not been breached.

For the foregoing reasons the fifth and last assignment of error is respectfully overruled.

Upon consideration of the record, as a whole, we have concluded that the defendant has had a fair and impartial trial and that a fair and just result has been reached.

All of the assignments of error having been considered and overruled, the judgment of the trial Court is affirmed. The defendant will pay the costs of this appeal.

Shriver, P. J. (M.S.), and Todd, J., concur.

## ON PETITION TO REHEAR AND MODIFY

PURYEAR, Judge.

The defendant-appellant has filed a petition seeking a partial rehearing and a modification of our decree affirming the trial Court by retaining the case in Court upon orders to the Clerk and Master to pay the complainant-appellee a certain portion of the recovery upon a monthly basis of $1,000.00 per month until further orders of the Court.

In said petition it is insisted that the defendant-appellant should be given the right to apply at any time prior to expiration of the ten year contract of employment to show that the complainant-appellee had died or become disabled or had accepted other lucrative employment which would reduce the damages.

■ No precedent has been cited for such action by this Court and, in view of our Supreme Court's holding in East Tennessee, V. & G. Railroad Company v. Staub (1881), 75 Tenn. 397, it is our opinion that we do not

have any authority to grant the relief sought in such petition.

Therefore, the petition for rehearing and modification is respectfully denied.

Shriver, P. J. (M.S.), and Todd, J., concur.