BARRTON SCIENTIFIC, INC.,
Plaintiff-Appellee,

v.

Morris MOSS et al.,
Defendants-Appellants.

Court of Appeals of Tennessee,
Western Section.

Sept. 23, 1975.

Certiorari Denied by Supreme
Court March 1, 1976.

Thomas, Halliburton & Ballin, Memphis, for defendants-appellants.

Henry L. Klein, Donald E. Bourland and Rickey, Shankman, Blanchard, Agee & Harpster, Memphis, for plaintiff-appellee.

CARNEY, Presiding Judge.

By writ of error, the Defendants, Morris Moss, Mrs. Kathryn S. Adams, Mrs. Christine S. Agee, Mrs. Martha S. Gary, and Mrs. Sarah S. Taylor, have appealed from a judgment for $13,275 of date August 9, 1974, in favor of the Plaintiff Barrton Scientific, Inc. in the Circuit Court of Shelby County. The case was tried on oral testimony and depositions without a jury before the Trial Judge.

This lawsuit hinges upon the construction of Section 12.1 of a contract dated April 7, 1970, involving the sale of a group of blood banks by Central Blood Services, a Maryland Corporation, to IPCO Hospital Supply Corporation, a New York corporation. The total consideration of the sale was $5,310,-000 and Plaintiff's suit was for the balance of its "finder's fee" in connection with said contract of purchase and sale.

The corporate stock of Central Blood Services was owned one-half by Richard Dice of Birmingham, Alabama, one-fourth by Defendant Morris Moss of Memphis, Tennessee, and the other one-fourth interest was owned jointly by the Defendants Mrs. Kathryn S. Adams, Mrs. Christine S. Agee, Mrs. Martha S. Gary, and Mrs. Sarah S. Taylor, of Memphis, Tennessee, hereinafter called the Sparr sisters.

Section 12.1 of the contract reads as follows:

"12.1 Finder. Barton Scientific, Inc., of which C. Hilyard Barr, 4910 Vineta Avenue, LaCanada, California, is president, is the finder in connection with this transaction and is being paid $26,550.00 by IPCO and the balance of any fee by some or all of Sellers. With the exception of the foregoing, Sellers and IPCO each represent and warrant that they have not authorized any person to act as broker or finder in connection with this Agreement or the transactions contemplated hereby and have not agreed to pay any person any fee or other compensation as broker or finder in connection therewith. Sellers and IPCO each jointly and severally agree to indemnify and hold harmless the other from and against any claim, liability or obligation of any nature for any brokerage, finder's fee, commissions or other like payment (and also any expense incurred in investigating or defending the same, including counsel fees) based in any way on any agreement, arrangement or understanding claimed to have been made by any of Sellers or by IPCO, as the case may be, with any third party, provided however, Sellers are not obligated to pay any portion of the fee agreed to be paid by IPCO as set forth above."

Upon completion of the sale, the purchaser, IPCO, paid Plaintiff a $26,550 finder's fee. Richard Dice, owner of one-half of the corporate stock of Central Blood Services paid $13,275. The Defendants Moss and the Sparr sisters refused to pay the remaining $13,275 demanded by Plaintiff. The present lawsuit resulted.

The Trial Judge found, and it is not questioned on appeal, that the original agreement between IPCO, the purchaser, and Plaintiff Barrton Scientific, Inc. was that IPCO would pay Barrton Scientific, Inc. a finder's fee of one percent of the purchase price or the sum of $53,100. This was an oral agreement made in October, 1969. IPCO Corporation is not a party to this lawsuit.

In March, 1970, while the contract was being drawn, IPCO informed Mr. Hilyard Barr, president of Barrton, that the sellers would pay half the finder's fee and obtained a written agreement from Barrton to accept one-half of one percent in full settlement of the fee from IPCO.

The complaint charged that all of the Defendant sellers had agreed that they would pay the one-half of the finder's fee which IPCO was not paying. Extensive testimony was heard by the Trial Judge after which the Court made a finding as follows:

"The Court has very carefully considered all of the proof in this case and is of opinion that the oral testimony is not of sufficient clarity to support a contract for payment of one-half of the finder's fee by

these defendants. As previously indicated at the close of the proof, the Court is of opinion that if there is liability for payment of one-half of the fee by the sellers it will have to be by virtue of the terms of the written contract of purchase entered into by and between IPCO and the sellers on April 7, 1970 . . . The Court is of opinion that a determination of the controversy here involved turns on a construction of simply the first sentence of the above quoted Sec. 12.1, reading as follows:

'Barrton Scientific, Inc., of which C. Hilyard Barr, 4910 Vineta Avenue, LaCanada, California, is president, is the finder in connection with this transaction and is being paid $26,550.00 by IPCO and the balance of any fee by some or all of Sellers.' "

The Court then held that such language made Defendants jointly and severally liable for the balance of the finder's fee. His Honor the Trial Judge further stated that in his opinion the phrase quoted above was not ambiguous. However, if considered ambiguous, it should be construed against sellers Dice and Moss because they had their attorney insert the language into the contract, citing *Associated Press v. WGNS, Inc.,* 48 Tenn.App. 407, 417, 348 S.W.2d 507.

Though the evidence is in sharp conflict, we concur in the finding of the Trial Judge that the Plaintiff has failed to sustain the burden of proving that the Defendants, Morris Moss and the Sparr sisters, ever agreed to pay any portion of the finder's fee to the Plaintiff Barrton Scientific, Inc. or to IPCO.

We must respectfully disagree with the learned Trial Judge in his interpretation of the phrase quoted above, to-wit, " . . . and the balance of any fee by some or all of the sellers." We hold that under said phrase, the Defendants do not agree to or contract for joint and several liability to the Plaintiff.

The phrase is incomplete on its face but indicates that there is a collateral agreement between or among some or all of the parties that some additional fee may be payable to Plaintiff from one or more of the sellers. Extraneous evidence is necessary to prove how much the fee was to be and who was to pay it. Since the collateral agreement was not in writing, parol evidence was admissible to prove the collateral agreement. *Anderson v. Sharp* (1953), 195 Tenn. 274, 259 S.W.2d 521; *Fulton v. Tennessee Walking Horse Breeders* (1971), 63 Tenn.App. 569, 476 S.W.2d 644.

The preponderance of the parol evidence establishes that the fee to be paid Plaintiff Barrton was $26,550; that Seller Dice agreed to and did pay $13,275 of said fee; that IPCO and Barrton expected the Defendant Sellers Moss and Sparr sisters to pay the remaining one-half or $13,275. However, we find the preponderance of the parol proof is that the Defendants Moss and Sparr sisters before the contract was signed told their attorneys and Seller Dice that they would not pay any finder's fee and that Seller Dice misled his friends Hilyard Barr and his employee, Jack Barr, into believing that Sellers Moss and Sparr sisters would pay a part of the finder's fee.

Mr. Jack Barr, one of the owners of Barrton Scientific, Inc., was in the employment of Mr. Dice in another Blood Bank Service called Community Blood Bank Service in Birmingham, Alabama. Subsequent to the purchase by IPCO of Central Blood Bank Services, IPCO purchased Community Blood Bank Service also owned by Mr. Dice and no finder's fee was paid by Dice for the sale of Community. At the time he testified in this case, Mr. Dice was employed by the purchaser, IPCO Hospital Supply, as Director of the Community Blood and Plasma Service in Birmingham, Alabama, a division of IPCO.

Mr. Hilyard Barr, his brother John W. Barr, and James Barrton, the principal owners of Barrton Scientific, Inc., were engaged for many years in the biological manufacturing business. Mr. Hilyard Barr was president of Courtland Laboratories which was later sold to the Abbott Company dealing primarily in derivatives of human blood plasma, also selling containers and other

products related to collecting, processing, and storing human blood. The IPCO experience was Barrton's first venture as a "finder" or broker.

IPCO's lawyers and Barrton's lawyers approved the final draft of Section 12.1 of the contract before it was signed. In reliance upon Mr. Dice's assurance to him that the sellers would pay the other one-half of the finder's fee, Mr. Hilyard Barr at Barrton Scientific, Inc. made a new agreement with IPCO to cut his finder's fee in half. We copy said agreement as follows:

"April 3, 1970

Barton Scientific, Inc.
4910 Vineta Avenue
La. Canada, California 91011
Attention: Mr. C. Hilyard Barr, President

Re: Central Blood Service, Inc.

Dear Sirs:

This will acknowledge that your company has been instrumental in arranging an introduction and bringing the parties together whereby Ipco Hospital Supply Corporation proposes to acquire all of the issued and outstanding stock of Central Blood Service, Inc., a Maryland corporation, whose wholly-owned subsidiaries are Central Blood Service, Inc., a North Carolina corporation, and Carolina Blood Bank, Inc., a South Carolina corporation. As full compensation for your services, we agree to pay you and you agree to accept a finder's fee of Twenty Six Thousand Five Hundred Fifty Dollars ($26,-550.00), being one-half of 1% of $5,310,-000.00, the value of the shares of our Common Stock to be issued in exchange for the stock being acquired. Said fee is subject to and contingent upon the closing of this transaction and shall be paid promptly after the closing.

You have not participated in and are not expected to participate in any of the negotiations, nor are you expected to render any other services in connection with such proposed acquisition.

We shall have no further obligation to you and you shall have no other claim against us for commissions, fees, expenses or of any other nature, with respect to this or any other transaction, except as we may otherwise expressly agree in writing.

Will you kindly confirm your agreement to the foregoing by your signature in the space below.

Very truly yours,
IPCO HOSPITAL SUPPLY
CORPORATION
By  Robert S. Savin

CONFIRMED AND AGREED TO:
BARTON SCIENTIFIC, INC.
By  C. Hilyard Barr
C. Hilyard Barr, President

I approve the above and confirm that I have no claim of any nature against IPCO Hospital Supply Corporation with respect to the transaction referred to in the foregoing letter and shall have no claim with respect to any other transaction, except as may otherwise be expressly and mutually agreed in writing.

C. Hilyard Barr
C. Hilyard Barr"

On or about April 7, 1970, representatives of IPCO, Mr. Dice, Mr. Moss and his wife, Mrs. Dale Moss, representatives of the Sparr sisters, appeared in New York and signed the acquisition agreement. The next day, April 8, 1970, Mr. Dice gave a check for $13,275 to Mr. Barr representing the part of the fee which he had agreed to pay. No demand was made on Moss or the Sparr sisters for any part of the finder's fee until several months after closing.

The preponderance of the evidence in this case is that at no time was the seller, Richard E. Dice, given authority to obligate the Defendant Morris Moss nor the Defendant Sparr sisters for payment of a finder's fee. The preponderance of the evidence is that the Defendant Morris Moss and the Sparr sisters have at all times refused to pay and have never agreed to pay a finder's fee. Dice admitted that he withheld information from Hilyard Barr that Moss and the Sparr sisters were refusing to pay any part of the finder's fee.

We hold that under Section 12.1 of the contract and the evidence introduced to ex-

plain said Section only the seller Mr. Dice agreed to pay a fee to Plaintiff and Defendants Moss and Sparr sisters are not liable for any part of said fee. Assignment of error No. I is sustained.

Defendants-Appellants also insist the Trial Judge erred in denying their Motion to Amend their Answer to plead the New York Statute of Frauds. The statute of frauds, Tennessee or New York, had not been previously pleaded. Section 12.11 of the contract provided that the agreement would be governed by and construed in accordance with the laws of the State of New York.

Defendants cite and rely upon T.C.P. Rule 15.01 which states that leave to amend should be freely given when justice so requires. The Motion was filed after the proof was concluded and the case had been taken under advisement. As mentioned by the Trial Judge there had been no compliance with T.C.P. Rule 8.03 which requires defenses such as statute of frauds to be set forth affirmatively in short and plain terms nor had Defendants given reasonable notice as required by T.C.A. Section 24–610 that they intended to prove the law of New York or ask the Trial Judge to take judicial notice thereof. The Trial Judge correctly held that the Motion to Amend came too late. We have read the recent case of *Branch et al. v. Warren et al.* 1975, Tenn., 527 S.W.2d 89, construing T.C.P. Rule 15.01 but hold that the facts in this case do not bring the case within the opinion of Justice Henry in *Branch et al. v. Warren et al.,* supra. Assignment of error No. II is overruled.

Judgment will be entered reversing the lower Court, dismissing the Plaintiff's suit and taxing the Plaintiff with the costs in the Court below and in this Court.

MATHERNE and PURYEAR, JJ., concur.