RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0451p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LISA SEAWRIGHT,

*Plaintiff-Appellee,*

*v.*

No. 07-5091

AMERICAN GENERAL FINANCIAL SERVICES, INC.,
AMERICAN GENERAL FINANCE, INC., and AMERICAN
INTERNATIONAL GROUP, INC.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 06-02339—Bernice B. Donald, District Judge.

Argued: September 11, 2007

Decided and Filed: November 13, 2007

Before: BOGGS, Chief Judge; and MARTIN and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jody A. Ballmer, LITTLER MENDELSON, Chicago, Illinois, for Appellant. David B. Stevenson, NORWOOD, HOWARD & ATCHLEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Jody A. Ballmer, Marissa Ross, LITTLER MENDELSON, Chicago, Illinois, for Appellant. David B. Stevenson, NORWOOD, HOWARD & ATCHLEY, Memphis, Tennessee, for Appellee.

BOGGS, C. J., delivered the opinion of the court, in which SUTTON, J., joined. MARTIN, J. (pp. 11-12), delivered a separate dissenting opinion.

_____

## OPINION

_____

BOGGS, Chief Judge. Lisa Seawright worked for American General Financial Services ("AGF") from November 1978 until April 2005.[1] AGF terminated Seawright's employment in April 2005. In response, Seawright filed suit in the United States District Court for the Western

---

[1] American General Financial Services, Inc., American General Finance, Inc., and American International Group, Inc. operate as an integrated or joint employer under Tennessee law.

District of Tennessee, alleging that AGF discharged her in violation of Tennessee anti-discrimination law and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* AGF moved to compel arbitration, proffering an arbitration agreement to which Seawright had previously agreed. Seawright denies that she agreed to arbitrate. At issue is whether an agreement exists between AGF and Seawright, and if so, whether the agreement is enforceable. The district court found that no enforceable agreement existed. We hold that Seawright's knowing continuation of employment after the effective date of the arbitration program constituted acceptance of a valid and enforceable contract to arbitrate. We therefore reverse the district court's denial of AGF's motion to compel arbitration.

I

In April 1999, AGF began notifying its employees that it would be implementing an Employee Dispute Resolution ("EDR") Program. It introduced the EDR Program through a series of announcements and informational meetings. The company first informed employees about the EDR Program on April 6, 1999 in a "Home Office Bulletin," a publication circulated to all company offices, including the office where Seawright was a branch manager. Around the same time, AGF also mailed letters to its employees informing them that the EDR Program would become effective June 1, 1999. Included with the letter was an informational brochure, which stated:

> The AGF Employee Dispute Resolution Program is the sole means of resolving employment-related disputes between you and the company or you and another employee, including disputes for legally protected rights such as freedom from discrimination, retaliation, or harassment, unless otherwise prohibited by law.

> You are still free to consult or file a complaint with any appropriate state or federal agency, such as the EEOC, regarding your legally protected rights. However, the Program must be used instead of a trial if you are not satisfied with the results of the government agency process, unless otherwise prohibited by law.

> Seeking, accepting, or continuing employment with AGF means that you agree to resolve employment related claims against the company or another employee through this process instead of through the court system.

AGF then held group informational meetings explaining the program. A pamphlet distributed to the employees during the informational meeting repeated the information above. Seawright signed an attendance sheet acknowledging that she had attended an informational session and received a copy of the AGF Employment Dispute Resolution Pamphlet. The EDR Program went into effect on June 1, 1999. Seawright remained an AGF employee.

Two years after the program went into effect, in June 2001, AGF mailed its employees a letter that reminded them that the EDR Program was still in effect and explained how to locate additional information on the program on the company's intranet website. The letter also included a brochure summarizing the EDR Program. The brochure was similar to the other two brochures that had been distributed by mail and at the informational meetings. It also included the same three paragraphs regarding the binding nature of the arbitration agreement and reiterating that, "[s]eeking, accepting, or continuing employment with AGF means that you agree to resolve employment related claims against the company or another employee through this process instead of through the court system."

Seawright continued her employment with AGF until AGF terminated her on April 26, 2005. She filed suit against AGF shortly thereafter and AGF responded with a motion to compel arbitration. In Seawright's answer to the motion to compel arbitration, she acknowledged the above facts but argued that (1) she did not assent to the EDR Program and that there was no bargained-for

exchange; (2) she did not enter into a written agreement as required by the Federal Arbitration Act, ("FAA"), 9 U.S.C. § 1 *et seq.*; and (3) in the alternative, the arbitration agreement is void because it is a contract of adhesion or unconscionable.  The district court agreed with Seawright's first argument, holding that "merely receiving information and acknowledging the EDR program is not tantamount to assent. There was no bargained for exchange, and [Seawright] had no ability to affect the terms of the company's policy." *Seawright v. Amer. Gen. Fin. Serv.*, No. 06-2339 DV, 4 (W.D. Tenn. Dec 22, 2006) (order denying motion to compel arbitration and stay proceedings).  It thus denied the order to compel arbitration on the basis that there was no valid and enforceable agreement. *Ibid.* AGF now appeals.

## II

We review de novo a district court's decision whether to compel arbitration pursuant to the FAA. *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004); *Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483, 487 (6th Cir. 2001); *Morrison v. Circuit City Stores*, 317 F.3d 646, 675 (6th Cir. 2003) (en banc).

## III

The FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2006).  This section of the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  While the courts must respect "the liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), arbitration is a "matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) and *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 570 (1960)).  Thus, the underlying question of whether the parties agreed to arbitrate is to be "decided by the court, not the arbitrator." *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986).

Because arbitration agreements are fundamentally contracts, we review the enforceability of an arbitration agreement according to the applicable state law of contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995).  Any arguments based on the applicability of the FAA to the agreement at issue are, of course, evaluated in accordance with federal case law.  Seawright makes four arguments based on state contract law and a fifth argument based on the FAA.  Seawright's state contract law arguments are: (1) there was no valid arbitration agreement because she did not actually assent to the EDR Program; (2) there was no valid arbitration agreement because there was no consideration; (3) even if there had been assent and consideration, the arbitration agreement is unenforceable because it is illusory; and (4) alternatively, the arbitration agreement is unenforceable because it is an unconscionable contract of adhesion.  Seawright's argument under the FAA is that she did not enter into a *written* agreement as required by the Federal Arbitration Act.  We begin by addressing Seawright's arguments based on state contract law.

### A. Assent

The issue at hand is whether Seawright's continued employment with AGF constituted assent. "Tennessee law recognizes the validity of unilateral contracts, in which acceptance is indicated by action under the contract." *Fisher v. GE Med. Sys.*, 276 F. Supp. 2d 891, 895 (M.D. Tenn. 2003). The written materials accompanying the arbitration agreement clearly stated that continued employment after the effective date of the EDR Program would constitute the employee's acceptance of the agreement to arbitrate. Thus, under Tennessee law, Seawright expressed a valid assent when she continued to work for AGF.

The district court acknowledged that "[g]enerally, continued employment constitutes acceptance of an employer's arbitration policy." *Seawright*, No. 06-2339 DV at 3. Nevertheless, relying exclusively on an unpublished case, *Lee v. Red Lobster Inns of America*, 92 F. App'x 158 (6th Cir. 2004), the district court concluded that "merely receiving information and acknowledging the EDR program is not tantamount to assent." This misstates the issue. The question is not whether the mere receipt of an offer constitutes acceptance but whether an action–continuing one's employment–can constitute acceptance. Under Tennessee law, continued employment can constitute acceptance. *Fisher*, 276 F. Supp. 2d at 895 ("By continuing to work at GE, the plaintiffs accepted the terms of [the arbitration agreement], a binding contract."); *see also Byrd v. CIGNA Healthcare*, 2002 U.S. Dist. LEXIS 26902, *7 (Feb. 8, 2002 E.D. Tenn.) ("By its terms, 'accepting employment and being eligible to receive increases in compensation and benefits' binds [an] employee [of the defendant company] to arbitrate employment-related claims.") (quoting the defendant company's employee handbook).

Furthermore, *Lee* is distinguishable from the present case due to two important differences in its facts that the district court did not mention. First, the agreement at issue in *Lee* did not contain any provision that stipulated continued employment would constitute acceptance. Thus, the agreement could not be accepted by unilateral action. Second, unlike Seawright, the plaintiff in *Lee* explicitly told her boss that she did not assent to the agreement.[2] Additionally, the court in *Lee* specifically cautioned against relying on its decision in cases with different facts: "The case at bar is distinguishable, of course, from cases in which employer-distributed materials told employees that their continuing to work would constitute acceptance of the employer's dispute resolution plan." *Id.* at 163 n.4. The case cautioned against in the footnote is, of course, exactly our case.

Seawright also relies on *Miller v. Am. Gen. Fin. Corp.*, 2002 U.S. Dist. LEXIS 16724 (E.D. La. Sept. 4, 2002) to demonstrate that she did not express valid assent. However, the court in *Miller* based its decision on Louisiana state contract law, which differs significantly from Tennessee state contract law. In Louisiana "when special formalities are prescribed for a contract, the same formalities are required for an offer or acceptance intended to form that contract." La. Civ. Code Ann. Art. 1927 (West 2001) cmt. c. Thus, the court in *Miller* reasoned that because the FAA required the agreement to be in writing, Louisiana contract law further required that the acceptance of the agreement be in writing. In Tennessee, however, acceptance of a written agreement can be performed by action under the contract. *Fisher*, 276 F. Supp. 2d at 895. Thus, *Miller* is inapposite to the case at hand.

Noticeably absent from Seawright's brief is a discussion of the "knowing and voluntary waiver" requirement established by this circuit in *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003) (en banc). In *Morrison*, the court applied "ordinary contract principles in determining whether" a binding arbitration agreement that included a waiver of a right to sue in

---

[2]We note that Seawright did not explicitly object to the arbitration agreement only in order to distinguish this case from *Lee*. Seawright's acceptance came not from her silence in the face of an offer, but from her performance under the contract–that is, her continued employment.

court was valid. *Id.* at 668 (citing *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995)). In determining whether an employee "knowingly and voluntarily" waived the right, the court considers: "(1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances." *Id.* at 668. In *Morrison*, the court found that the plaintiff knowingly and voluntarily waived her right to sue based on the fact that she was "a highly educated managerial employee who was capable of understanding the terms of the agreement" and that the "waiver of the right to file suit in federal court was plain." Seawright is similarly situated: She is an educated, managerial employee, who was capable of understanding the EDR Program's provisions. Also, like Morrison, Seawright had ample time (in Seawright's case, two months) between AGF's announcement of the EDR Program and the Program's commencement during which she could have consulted with an attorney or decided she did not wish to waive her rights. Finally, the EDR Program clearly stated that employees, by agreeing to the EDR Program, would be waiving their rights to sue in federal court.

Though Morrison signaled her assent to the arbitration agreement through a signature and Seawright signaled her assent through action, nowhere in *Morrison* does the court hold that the waiver must be express and in writing. Indeed, such a requirement would likely be inconsistent with federal case law interpreting the FAA itself. As we elaborate below, arbitration agreements under the FAA need only be written, not necessarily signed. If this court were to equate "knowing and voluntary" with "express and written" then we would effectively require that all arbitration agreements be signed to be enforceable. This would be in conflict with both the plain reading of the statute and with past precedent interpreting the statute. Accordingly, we find that, although Seawright did not sign a waiver, her acceptance of the EDR Program–which stated that parties to the agreement waived their right to sue in court–was knowing and voluntary.

## B. Consideration

Addressing the issue of consideration, the district court stated that the agreement lacked "bargained for exchange." The district court seemed to base this conclusion on the fact that Seawright "had no ability to affect the terms of the company's policy." That fact, however, is irrelevant to whether there is a bargained-for exchange. Under Tennessee contract law, "[m]utuality of promises is 'ample' consideration for a contract. A mutual promise 'in itself would constitute a sufficient consideration.'" *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351 (Tenn. Ct. App. 2001) (quoting *Rodgers v. Southern Newspapers, Inc.*, 379 S.W.2d 797, 800 (Tenn. 1964)); *see also Buraczynski v. Eyring,* 919 S.W.2d 314, 321 n.6 (Tenn. 1996). In the agreement at issue, the arbitration process was binding on both employer and employee, regardless of who requested arbitration. Thus, employer and employee were equally obligated to arbitrate those disputes falling within the coverage of the plan. This is enough to ensure mutuality of obligation and thus constitute consideration.

## C. Illusory Contracts

Though Seawright's brief does not explicitly argue this point, her statement that "in contrast to the employee's inability to challenge the EDR program, the Companies maintained the right to change or terminate the program at any time" (Appellee's Br. 6-7) might be construed as an argument that the agreement was illusory and therefore void. Tennessee law requires that a contract not be illusory, that is, that it impose genuine obligations on both parties. *Parks v. Morris*, 914 S.W.2d 545, 550 (Tenn. Ct. App. 1995) ("If one or both parties to a contract have the right to cancel or terminate the agreement, then the contract lacks mutuality and is unenforceable") (internal quotation omitted). In *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000) the court found the arbitration agreement to be "fatally indefinite" because the employer "reserved the

right to alter the applicable rules and procedures without any obligation to notify, much less receive consent from" the employees. *Id.* at 315-16. The arbitration agreement in this case is distinguishable. While the defendant companies reserved the right to terminate the EDR at any time, they also agreed to be bound by the terms of the agreement for 90 days after giving reasonable notice of the termination and as to all known disputes arising before the date termination. J.A. 341. Thus, the companies were bound by the terms for at least 90 days after the agreement came into effect.[3] This reciprocal obligation to arbitrate at least those claims arising in the 90-day period after the effective date of the agreement satisfies the mutuality requirement.

## D. Contracts of Adhesion and Unconscionability

### 1

Seawright argues that the arbitration agreement is "unenforceable and/or void because it is a contract of adhesion entered into with unequal bargaining power and because it is substantively unconscionable." (Appellee's Br. 22). The Supreme Court has made it clear that "[m]ere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991). The Court went on to write, "Of course, courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds "for the revocation of any contract." *Id.* at 33 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (2005)). Thus, to determine whether a contract is unenforceable we must follow Tennessee law governing the enforceability of contracts of adhesion.

The Supreme Court of Tennessee has defined an adhesion contract as being "a standardized form offered on what amounts to a 'take it or leave it' basis, without affording the weaker party a realistic opportunity to bargain, and under conditions whereby the weaker party can only obtain the desired product or service by submitting to the form of the contract." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996); *see also Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 384 (6th Cir. 2005); *Howell v. NHC Healthcare-Fort Sanders, Inc.*, 109 S.W.3d 731, 733-34 (Tenn. Ct. App. 2003). However, a contract is not adhesive merely because it is a standardized form offered on a take-it-or-leave-it basis. The last element of adhesion, "the absence of a meaningful choice for the party occupying the weaker bargaining position," must also be present. *Cooper v. MRM Inv. Co.*, 367 F.3d 493 (6th Cir. 2004). While the agreement at issue here may fulfill the first three conditions, Seawright has not demonstrated the final element. Applying Tennessee state law, the Sixth Circuit in *Cooper* held that an employer's mandatory arbitration agreement was not a contract of adhesion based on the failure of a similar condition:

> To find *this* contract adhesive, however, there must be evidence that [the employee] would be unable to find suitable employment if she refused to sign [the employer's] agreement. She presented no such evidence. For instance, she did not allege that she looked for comparable jobs but was unable to find one. Generalizations about employer practices in the modern economy cannot substitute for such evidence. *See Andersons, Inc. v. Horton Farms*, 166 F.3d 308, 324 (6th Cir. 1998) (no procedural

---

[3]In reality, the parties' mutual obligations have lasted for at least five years, from the EDR Program's effective date on June 1, 1999 to the date of Seawright's termination in April 2005. But the question of consideration is whether there was mutuality of obligation at the time the agreement was entered into. If AGF had terminated the EDR Program the day after the effective date, the parties would have been bound to arbitrate disputes arising in the next 90 days. It is this 90-day period, and not the actual length of time that the parties were bound by EDR Program, that constituted consideration.

unconscionability where grain seller "failed to present evidence that it searched for other alternatives and that there were none").

*Cooper*, 367 F.3d at 502.

In *Walker v. Ryan's Family Steak Houses, Inc.,* the Sixth Circuit reiterated Tennessee's standard for finding a contract of adhesion in an employment context: "To find their Arbitration Agreements adhesive, the district court was required to cite evidence that [Plaintiffs] would be unable to find suitable employment if [they] refused to sign [the arbitration] agreement. *Id.* at 384 (internal quotations omitted). While the court in *Walker* held that the agreement was unenforceable on other state law grounds, the court had "some concerns about whether Plaintiffs demonstrated the final element of an adhesion contract: 'the absence of a meaningful choice for the party occupying the weaker bargaining position.'" *Id.* Like the plaintiffs in *Cooper* and *Walker*, Seawright has presented no evidence that she would be unable to find suitable employment if she had refused to be a party to the arbitration agreement. Thus, we hold that the agreement is not a contract of adhesion.

2

Even if Seawright could show that the arbitration agreement was adhesive, she would also have to demonstrate that it was unconscionable. *Cooper*, 367 F.3d at 503. In Tennessee, adhesion contracts are unenforceable only when the terms are "beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable."[4] *Buraczynski*, 919 S.W.2d at 320; *see also Pyburn*, 63 S.W.3d at 359 (Tenn. App. 2001). A contract is unconscionable when the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984). Courts will not enforce adhesion contracts which are "oppressive to the weaker party or which serve to limit the obligations and liability of the stronger party." *Buraczynski*, 919 S.W.2d at 320 (Tenn. 1996). The Tennessee Supreme Court recognizes both substantive and procedural elements of unconscionability. *Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 2004) ("The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect. Relevant factors include weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes . . . .") (citing Restatement (Second) of Contract § 208, cmt. a (1981)).

Seawright does not argue, and this court could not hold, that the arbitration agreement was *substantively* unconscionable. The underlying arbitration agreement is equitable in that it binds both employer and employee to arbitration and does not "limit the obligations and liability of the stronger party"–the employer. This distinguishes the EDR Program from the arbitration agreements that Tennessee courts have held unconscionable. *See, e.g.*, *Taylor v. Butler*, 142 S.W.3d 277 (Tenn. 2004) ("City Auto has a judicial forum for practically all claims that it could have against Taylor. . . . At the same time, Taylor is required to arbitrate any claim that she might have against City Auto.").

---

[4] Seawright argues that the "the presence of unequal bargain power can make an arbitration agreement unenforceable," relying on *Nguyen v. City of Cleveland*, 121 F. Supp. 2d 643 (N.D. Ohio 2002). This mischaracterizes the court's reasoning. In *Nguyen* the court denied the employer's motion to compel arbitration because of a conflict between the policies of the FAA and the False Claims Act ("FCA"): "Thus while this Court does not find that the plain text of the whistleblower statute or the legislative history clearly demonstrate Congress's intention to except whistleblower retaliation claims from the Arbitration Act, it does find that a conflict exists between arbitration and the underlying purposes of the FCA." *Id.* at 647. Seawright's reliance on *Nguyen*'s reference to "unequal bargaining power" is thus taken out of context. Moreover, *Nguyen* explicitly acknowledges that "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Id.* at 647 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)).

Seawright's only argument that the contract was procedurally unconscionable is her contention that there was unequal bargaining power. The finding that "an employee had less bargaining power *is* relevant to the procedural-unconscionability analysis." *Cooper*, 367 F.3d at 504. Seawright did not present evidence of any "factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, and relative bargaining power." *Ibid.* (citing *Morrison*, 317 F.3d at 666). Moreover, given Seawright's education and position as a branch office manager who had worked for the company for two and a half decades, it is unlikely that she could marshal such evidence. This distinguishes Seawright from a low-level employee who may be "required to sign an arbitration agreement precisely at the time that he or she is most willing to sign anything just to get a job." *Cooper*, 367 F.3d at 504 (citing *Cooper v. MRM Inv. Co.*, 199 F. Supp. 2d 771, 780 & n.8 (M.D. Tenn. 2002)).

For the forgoing reasons we find that Seawright entered into a valid and enforceable agreement to arbitrate.

### E. The Federal Arbitration Act

In addition to Seawright's four arguments that the agreement is unenforceable under Tennessee state contract law, she asserts a fifth argument that a federal court cannot compel arbitration pursuant to the FAA because the arbitration agreement at issue was not written as required by the FAA. The FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. §2 (2006). Seawright analogizes the FAA to the Statute of Frauds; however, unlike contracts that fall under the Statute of Frauds, arbitration agreements under the FAA need to be written, but not necessarily *signed*.[5] *Fisher*, 276 F. Supp. 2d at 285. The agreement at issue here was written.[6] A pamphlet entitled "American General Finance Company's Employee Dispute Resolution Program," was distributed via United States mail to employees. That pamphlet describes the arbitration procedures, makes it clear that the agreement is one for binding arbitration in lieu of a trial, and asserts that "[s]eeking, accepting, or continuing employment with AGF means that you agree to resolve employment related claims against the company or another employee through this

---

[5] Authority from a number of other circuits supports this view. *See, e.g.*, *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2nd Cir. 1987) ("[W]hile the [FAA] requires a writing, it does not require that the writing be signed by the parties."); *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987) ("We note also that section three of the Act does not require that a charter party be signed in order to enforce an arbitration agreement contained within it."); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002) ("Although § 3 of the FAA requires arbitration agreements to be written, it does not require them to be signed."); *Medical Development Corp. v. Industrial Molding Corp.*, 479 F.2d 345 at 348 (10th Cir. 1973) ("It [is] not necessary that there be a simple integrated writing or that a party sign the writing containing the arbitration clause."); *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) ("We readily conclude that no signature is needed to satisfy the FAA's written agreement requirement.").

[6] Seawright attempts to distinguish the agreement in *Fisher* on the basis that the agreement at issue there involved a "non-binding arbitration policy in which the employee did not waive any rights." (Appellee's Br. 21-22). But those particular facts are irrelevant to the determination of whether a contract is written.

process instead of through the court system." J.A. 291.[7] Thus, the arbitration agreement, including the provision that continued employment would constitute acceptance, was written. This is in line with the conclusions of other circuits. In *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359 (11th Cir. 2005), the Eleventh Circuit held that a similar arbitration agreement satisfied the requirement of being written: "Although the employees' acceptance was by continuing their employment and was not in writing, all material terms - including the manner of acceptance - were set forth in the written [Dispute Resolution Program ("DRP")]. The DRP stated that it was a contract and constituted the entire agreement between the employee and Gulfstream as to covered claims." *Ibid.; see also Medical Development Corp. v. Industrial Molding Corp.*, 479 F.2d 345, 348 (10th Cir. 1973) ("It [is] not necessary that there be a simple integrated writing or that a party sign the writing containing the arbitration clause").

IV

It has been over eighty years since the FAA was originally enacted.[8] Its purpose was to reverse the longstanding judicial hostility towards arbitration agreements and to place arbitration agreements upon the same footing as other contracts. *Gilmer*, 500 U.S. at 21 (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219-20 n.4 (1985) and *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510 n.4 (1974)). Congress has asserted a national policy favoring arbitration and the Supreme Court has found that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum." *Gilmer*, 500 U.S. at 26. While it is unjust to bind a party to agreement in the absence of assent or to enforce a contract that is unconscionable, it betrays an unfounded hostility towards arbitration when courts actively seek to void substantively reasonable agreements procured through fair procedure. The Supreme Court has "rejected generalized attacks on arbitration that rest on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants." *Green Tree Financial Corp.--Alabama v. Randolph*, 531 U.S. 79, 89-90 (2000) (citations omitted). Even claims "arising under a statute designed to further important social policies" may be arbitrated provided that "the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Id.* at 90.

The employer at issue here did not try to hide its mandatory arbitration policy or try to trick its employees into agreeing to the policy. Nor did the employer choose an arbitration forum that would discourage employees from submitting disputes or favor the employer in the resolution of those disputes. In the absence of evidence that assent to the arbitration agreement was procured though unfair means or that the agreement itself was substantively unfair, courts should enforce mandatory arbitration agreements on the same basis as any other agreement that employers require as a condition of employment. Seawright has failed to demonstrate any state grounds upon which the agreement might be void or unenforceable and has failed to demonstrate the agreement did not comply with the "written" requirement of the FAA. We therefore REVERSE the district court's

---

[7]The court in *Lee* found that similar materials did not constitute a written arbitration agreement, stating: "An agreement is a manifestation of mutual assent on the part of two or more persons. Restatement (Second) of Contracts § 3 (1981). Lee's assent to arbitrate is not manifested in the DRP handbook, poster, video, pamphlet, information sheet or Red Lobster's employee booklet." *Lee*, 92 Fed. Appx. at 162. This reasoning conflates two distinct meanings of the word "agreement" and misunderstands the requirements of the FAA. The Restatement uses the term "agreement" to refer to a set of legal obligations. The term "agreement" in the phrase "written agreement," however, refers to an actual document–the physical embodiment of the underlying legal obligations. Parties may assent to a written agreement, thus forming a set of legal obligations, without putting the assent itself in writing.

[8]The FAA was originally enacted in 1925, 43 Stat. 883, and then reenacted and codified in 1947 as Title 9 of the United States Code.

decision denying the order to compel arbitration and REMAND to the district court for further proceedings consistent with this opinion.

————————

**DISSENT**

————————

BOYCE F. MARTIN, JR., Circuit Judge, dissenting.  The Court's ruling today goes too far in subordinating the constitutional rights of employees to the convenience of employers.  The "agreement" between Seawright and AGF – which was not signed, contained a unilateral working-as-acceptance provision, and constituted a total waiver of the right to access a court – goes past the acceptable limit of what employers can force upon their employees without the employees' consent.

First and foremost, Seawright's signature appears nowhere on any arbitration agreement.  Thus we have no proof that she manifested assent to the contract.  Although Tennessee law does permit unilateral contracts, no Tennessee court has decided whether continuing employment is effective as a waiver of constitutional rights.  A unilateral contract is one where an offeror "reasonably expects to induce action of a definite and substantial character" from the offeree.  *See Curtiss Candy Co. v. Silberman*, 45 F.2d 451, 453 (6th Cir. 1930).  Implicit in this understanding is that the offeree is aware of the significance of the act performed.  Without a signal that she understands that a contract is being made, how is one to know if she has truly accepted?[1]

The majority cites Seawright's failure to express her lack of assent as evidence that she assented (distinguishing her from the plaintiff in *Lee*, who told her boss she did not agree to the program).  *See Lee v. Red Lobster Inns of Am., Inc.*, 92 Fed. Appx. 158, 162 (6th Cir. 2004).  As we held in that case, however, it is too onerous to require employees to object to new agreements imposed upon them: "a contract such as this places the burden on the employee to repeatedly object to a company's unilaterally adopted arbitration policy or risk being found to have agreed to it. This is not how contracts are formed." *Id.*  "The mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him any duty to speak."  *Id.* (citing RESTATEMENT (SECOND) OF CONTRACTS § 69, cmt. a (1981)).  After today, however, an employee apparently must expressly reject the agreement in order not to be bound by it.

The majority also cites *Fisher v. GE Med. Sys.*, 276 F. Supp. 2d 891, 895 (M.D. Tenn. 2003) and *Byrd v. CIGNA Healthcare*, 2002 U.S. Dist. LEXIS 26902, at *7 (E.D. Tenn. 2002) for the proposition that continuing employment binds an employee to arbitrate employment-related claims.  *Fisher*, however, is inapposite because the arbitration agreement at issue there was non-binding.  Indeed, even in that case, the precedent cited by the court involved employment agreements that were signed and *then* acted under. *Byrd*, too, is different from Seawright's case.  Byrd signed a receipt for an employee handbook that contained the policy that stated, "I have *reviewed* the material which includes information on policies, programs and services for employees of the CIGNA companies." *Id.* at *7 (emphasis added).  Here, Seawright's only signature was on an "Information Session Sign-In Sheet," in which "I acknowledge that I have *attended* the information session and *received* a copy of the AGF Employee Dispute Resolution pamphlet."  Joint App'x 319 (emphasis added).  The script for the information session says that the sign-in sheet "confirms that you attended the information session," not that the employees read or understood the policy's binding nature. *Id.* at 315.  Without a signature on a document that proves Seawright was at least aware of the nature of the agreement, it is impossible to say she knowingly waived her rights.

————————

[1] Homer Simpson talking to God: "Here's the deal: you freeze everything as it is, and I won't ask for anything more.  If that is OK, please give me absolutely no sign. [no response] OK, deal.  In gratitude, I present you this offering of cookies and milk.  If you want me to eat them for you, please give me no sign. [no response]  Thy will be done." *The Simpsons: And Maggie Makes Three* (Fox television broadcast, Jan. 22, 1995).

In *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370 (6th Cir. 2005), we reiterated that employees cannot not be compelled to arbitrate their claims if they did not knowingly and voluntarily waive their constitutional right to a jury trial. *See also Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (en banc) (adopting the knowing and voluntary standard for agreements to arbitrate in lieu of litigation). According to *Morrison*, to evaluate whether a plaintiff has knowingly and voluntarily waived his or her right to pursue employment claims in federal court, a court must evaluate a number of factors, including the employee's experience, background, education, and amount of time she had to consider the agreement. *Id.* (quoting *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995)). The majority is correct that Seawright is an educated, capable employee with the capacity to understand contract terms. The *Morrison* factors assume, however, that an employee is aware that she is entering into a new agreement.

Because Seawright never performed any action that signaled that she knowingly and voluntarily entered into the agreement (and waived her rights), it is unreasonable to hold her to the agreement's terms. Thus I respectfully DISSENT from the majority's opinion.