NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0255n.06

No. 09-1812

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Apr 26, 2010**

LEONARD GREEN, Clerk

ALAN ALONSO; KIMBERLY ALONSO, )
                                  )
       Plaintiffs-Appellants,      )       ON APPEAL FROM THE UNITED
                                    )       STATES DISTRICT COURT FOR
v.                               )       THE EASTERN DISTRICT OF
                                    )       MICHIGAN
HURON VALLEY AMBULANCE       )
INCORPORATED,                )       **OPINION**
                                    )
       Defendant-Appellee.        )

Before:  MARTIN and GIBBONS Circuit Judges, and MARBLEY, District Judge.[*]

**MARBLEY, District Judge.**  Appellants, Alan and Kimberly Alonso, appeal the district court's grant of summary judgment in favor of Appellee Huron Valley Ambulance on the Alonsos' employment discrimination claims, contending that the district court applied the wrong standard in evaluating Huron Valley Ambulance's Grievance Review Board process for fairness.  Alternatively, they allege that even if the district court applied the correct standard, it improperly concluded that the process was fair.  Because the district court erred in finding that the Alonsos knowingly and intelligently waived their right to a judicial forum, its decision is **REVERSED** and the case is **REMANDED** for proceedings consistent with this opinion.

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

No. 09-1812
*Alonso v. Huron Valley Ambulance, Inc.*

## I.  BACKGROUND

### A.  APPELLANTS' EMPLOYMENT WITH APPELLEE

Alan and Kimberly Alonso are a married couple, both of whom were formerly employed by Huron Valley Ambulance ("HVA").[1]  HVA is a non-profit organization based in Ann Arbor, Michigan, which provides ambulance and educational assistance to the community.  It currently serves an eight-county area in southern Michigan.

HVA initially interviewed potential employees, including Alan and Kimberly Alonso, in 2005.  Alan Alonso signed an employment agreement with HVA on July 4, 2005, and Kimberly Alonso signed one on July 8, 2005.  Both Alan and Kimberly were hired in late July or early August, 2005.

In mid-August, 2005, Appellants each attended an orientation, at which they received a copy of HVA's Operations Policies and Procedures Manual.  Each Appellant signed a document acknowledging receipt of that Manual.

### B.  GRIEVANCE REVIEW BOARD PROCEDURE

When HVA interviews a new employee, it requires the candidate to sign an employment

---

[1]At the time of the district court's first opinion *Alonso v. Huron Valley Ambulance*, 2009 WL 1469641 (E.D. Mich. May 26, 2009), Kimberly Alonso was still employed by HVA.  The first opinion, therefore dealt with Alan Alonso's claims regarding his termination and Kimberly Alonso's claims regarding a hostile work environment, retaliation through demotion, and emotional distress. However, after the issuance of the first opinion, Kimberly Alonso's employment was terminated because of repeated abuse of leave under the Family Medical Leave Act.  The district court's second opinion, *Alonso v. Huron Valley Ambulance*, 2009 WL 4948116 (E.D. Mich. Dec. 14, 2009), dealt with Kimberly's claims arising out of the termination of her employment.  Only the first decision is at issue in this appeal.

application. That application contains a provision agreeing to submit all employment-related claims to HVA's internal Grievance Review Board ("GRB"). The provision states that the GRB is the employee's exclusive remedy for any employment-related claims.

HVA uses a four-step grievance process.[2] The first step is for the aggrieved employee to discuss the problem with his immediate supervisor. The second step permits the aggrieved employee to discuss the matter with his Department Vice President if his immediate supervisor is not the head of the department and the employee is dissatisfied with the outcome of the first step. The third step gives the aggrieved employee the right to discuss the problem with the President and C.E.O. of HVA, who will attempt to resolve the matter. The final step is available to employees who have completed a 180-day introductory period of employment. Such employees, if dissatisfied with the results of the first three steps, may request that the matter be heard before a GRB, which will issue a final and binding decision on the matter. The GRB is composed of five members: two representatives chosen by the employee (one line level employee and one supervisor or manager); two representatives chosen by the President and C.E.O. (one line level employee and one manager or supervisor); and one representative chosen jointly by the employee and the President and C.E.O.

At the hearing, the GRB is to select a Chair, who is responsible for maintaining order and assuring that the appropriate policies are followed during the hearing. During all testimony, both the Department Vice President and the aggrieved employee are to be present. Each party is entitled to present witnesses, evidence, and argument, and to question witnesses. The Human Resources

---

[2]This process is outlined in the Operations Policies and Procedures Manual, which is given to each employee upon commencement of employment. (HVA Br. at 3.)

Manager is to record the proceedings, but is not to be present during deliberations. While the deliberations are not recorded, the findings and final decision of the GRB are to be read into an audio recording device, a tape of which is to be maintained for a minimum of three years. The GRB must reach a majority decision, but unanimity is not required. The GRB is to put its final findings and decision in writing and provide both parties with a copy.

### C. WAIVERS SIGNED

When Appellants initially applied for paramedic positions with HVA, they were each required to fill out an employment application. The last page of the application contained a section preceded by the phrase, "**PLEASE READ THE FOLLOWING BEFORE SIGNING**."[3] The section contained, among other things, notice of an internal grievance procedure for employment-related disputes, and a six-month limitations period for any employment-related claims. The internal grievance procedure provision provided:

> Any dispute arising out of or in connection with any aspect of my employment by the Company, or termination thereof, including by way of example but not limitation, disputes concerning alleged civil rights violations, breach of contract or tort, shall be exclusively subject to review by the Grievance Review Board. Any decision of the Review Board shall be binding to both parties, and enforceable in circuit court.

Additionally, the statute of limitations provision provided:

> I further recognize that if employed by the Company, I agree, in partial consideration for my employment, that I shall not commence any action or other legal proceeding relating to my employment or termination thereof more than six months after the termination of my employment and agree to waive any statute of limitations to the contrary.

---

[3]The text on the application was in bold and all capital letters.

Each Appellant signed and dated the application, placing a signature under a paragraph acknowledging that he or she had "read the above statements" and understood them.

Once Appellants were hired by HVA, they were given HVA's Operations Policies and Procedures Manual ("the Manual"). The Manual described HVA's four-step grievance policy, and stated under "Step 4" that "The Board's decision will be final and binding on all parties." *Alonso*, 2009 WL 1469641, at *3. The Manual also advises employees "to see 'Grievance Review Board Procedures – Administrative Policy No. 415.'" Administrative Policy No. 415 ("the Policy"), in turn, states:

> The Grievance Review Board's decision will be final and binding on both the employee and the company. This policy is designed to ensure a consistent procedure for the operation of the Grievance Review Board.
>
> As the final step of any employee grievance relating to any issue of promotion, demotion, discipline, layoff, recall, termination and/or constructive termination from employment, an aggrieved employee may request a hearing before a Grievance Review Board. Such a hearing before a Grievance Review Board will be the exclusive remedy available to an aggrieved employee, whenever the employee's grievance relates in any way to such topics. This procedure shall apply to disputes involving any and all legal claims or theories, including but not limited to claims for defamation, wrongful discharge, breach of contract, negligence, and other tort actions; whistle blower retaliation; or discrimination, harassment and/or retaliation on account of age, sex, sexual orientation, race, color, religion, marital status, handicap, height, weight, national origin or any other classification protected by law.

Upon receiving a copy of the Manual, Appellants acknowledged such receipt by signing underneath a paragraph reading:

> I, the undersigned, have received a revised copy of the Operations Policies and Procedures Manual for Huron Valley Ambulance, Inc., and understand that I am responsible for adhering to these Policies and Procedures. I also understand that I am responsible for keeping this manual updated as revisions and/or additions are made.

5

Alan Alonso signed this acknowledgment on August 16, 2005, and Kimberly Alonso signed it on August 15, 2005.

## D.  ALAN ALONSO'S CLAIMS

Appellant Alan Alonso joined the Army National Guard in June 2007.  He provided his supervisor with dates on which he was required to attend training.  Those dates included September 15 and 16, 2007, as well as February 9 and 10, 2008.  His request for time off on those dates was approved.  In February 2008, however, HVA confirmed, through information provided by Sergeant First Class Kevin R. Sherman, Michigan Army National Guard, that Alan Alonso did not actually attend training on the dates specified above.

On February 19, 2008, Alan Alonso suffered a medical emergency while at work.  He was taken to the emergency room, and he was diagnosed with "altered mental state" and "possible seizure."  When he was released from the emergency room, he was taken for a drug screen test.  He tested positive for hydrocodone, a mind-altering and function-altering substance for which he had a prescription.

On February 27, 2008, Alan Alonso was terminated for two violations of HVA's Code of Conduct:  (1) lying about his attendance at Army National Guard training; and (2) testing positive for a mind-altering and function-altering substance while at work.  He initiated HVA's internal grievance process the same day.  He requested a GRB hearing, at which he contested both proffered justifications for his termination.  The hearing was held on May 8, 2008.  On May 9, 2008, HVA provided him with written notice that the GRB had upheld his termination.

Upon completion of the GRB process, Alan Alonso filed a lawsuit against HVA in the United

States District Court for the Eastern District of Michigan. He alleged that HVA: (1) discriminated against and wrongfully discharged him because he is a member of Michigan's Army National Guard in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4323, and Michigan's Military Leaves Reemployment Protection Act, Mich. Comp. Laws Ann. § 32.271; (2) retaliated against him because he filed a complaint with the Michigan Occupational Safety and Health Administration ("MIOSHA") in violation of Michigan's public policy; (3) retaliated against him for filing an EEOC complaint after being demoted on July 15, 2007, for "an activity protected under the state and federal statutes;"[4] and (4) caused him to suffer humiliation and emotional distress in violation of Michigan tort law by disclosing facts about his drug test results, medical condition, and reason for termination.

## E. KIMBERLY ALONSO'S CLAIMS

In February 2007, Kimberly requested FMLA leave due to pregnancy. Her request was approved, and she began her leave in April. She returned to work on November 1, 2007. On December 14, 2007, she requested intermittent FMLA leave to care for her child. This request was also approved.

Kimberly Alonso joined her husband, Alan Alonso, in filing a lawsuit against HVA. Though Kimberly Alonso's employment had not been terminated, and she had not utilized the GRB procedure, she nonetheless alleged that HVA: (1) violated Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws Ann. § 37.2101 *et seq*., by subjecting her to a hostile work

---

[4]The district court was unable to discern under what statute Alan Alonso was claiming protection and therefore did not address this claim, which appeared as Count II of his complaint.

environment and disparate treatment based on her sex; (2) violated ELCRA and Title VII, 42 U.S.C. § 2000e-3(a), by retaliating against her for filing an EEOC complaint; (3) violated the FMLA by demoting her, threatening to replace her, not reinstating her to her field training officer position, and retaliating against her for taking FMLA leave; and (4) caused her to suffer emotional distress and humiliation by obtaining information about her medical condition and hospital admission and disclosing that information to her co-workers in violation of Michigan tort law.

The district court dismissed all of Alan Alonso's claims with prejudice, upholding the GRB process as comporting with procedural fairness requirements, holding that he knowingly and intelligently waived his right to a judicial forum for all of his claims, and holding that any claims that he had not raised before the GRB were time-barred by the six-month statute of limitations. Additionally, the district court dismissed all of Kimberly Alonso's claims without prejudice, holding that she had not exhausted her administrative remedies by participating in the GRB process.

## II.  JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because Plaintiff-Appellants are appealing the district court's Opinion and Order Granting Defendant's Motion to Dismiss or for Summary Judgment, which is a final judgment under the statute.

## III.  STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed de novo. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).  Under Rule 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c). "In deciding upon a motion for summary judgment, we must view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). "'We examine the grant of summary judgment to determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *DiCarlo*, 358 F.3d at 414 (quoting *C.T. Massey v. Exxon Corp.*, 942 F.2d 340, 342 (6th Cir. 1991)).

## IV. ANALYSIS

### A. SUMMARY JUDGMENT TIMELINESS

Appellants allege that the district court should not have dismissed their claims until further discovery had occurred. The district court refused to allow more discovery before considering the motion, finding that the record was sufficient to determine what was contained in the relevant employment documents, and that the issue of whether the GRB process comported with procedural fairness was a question of law for the court to decide. *Alonso*, 2009 WL 1469641, at *9. We agree. Appellants submitted affidavits to the district court with their opposition to Appellee's motion, but failed to allege facts refuting Appellee's claims. In addition, "the question whether the grievance procedure afforded plaintiff elementary fairness [is] a question of law which should [not] be submitted to the jury." *Renny v. Port Huron Hospital*, 398 N.W.2d 327, 329 (Mich. 1986). The decision to grant the motion was therefore timely.

### B. KNOWING AND INTELLIGENT WAIVER

As part of their employment applications, Appellants signed a waiver of their right to a judicial forum for adjudicating employment-related claims and a waiver shortening the statute of

limitations for all claims to six months. They contend that they did not knowingly and intelligently sign those waivers. The district court rejected that argument, and we reverse.

In determining whether a waiver was executed knowingly and voluntarily, a court considers: "'(1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.'" *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (quoting *Adams v. Phillip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995)). A knowing and voluntary waiver has been found where the person signing it was educated, had three days to determine whether to sign it, was advised that she might want to contact an attorney, and gave no indication that she did not understand the waiver. *Morrison*, 317 F.3d at 668. Similarly, a knowing and intelligent waiver has been found where the person executing it was a managerial employee capable of understanding the waiver and had two months to consider it, and where the waiver clearly indicated that she was waiving her right to sue in federal court. *Seawright v. Am. Gen. Fin. Servs.*, 507 F.3d 969, 974 (6th Cir. 2008). Finally, a knowing and intelligent waiver was found where the person executing it did not request extra time to consider it or contact a lawyer and did not indicate that he did not understand the waiver. *Moore v. Ferrellgas, Inc.*, 533 F.Supp.2d 740, 749 (W.D. Mich. 2008). In each of those cases, the employee was given some documentation regarding what type of process he or she would receive in place of a judicial proceeding. *See Morrison*, 317 F.3d at 654 (finding valid waiver where employee was informed "that all arbitrations would occur before a neutral arbitrator, . . . that all such arbitrations would be final and binding . . ., and that all

arbitrations were to proceed according to the 'Circuit City Dispute Resolution Rules and Procedures'"); *Seawright*, 507 F.3d at 970 (finding valid waiver where employer sent all employees a letter and a copy of the new dispute resolution procedures and conducting informational meetings to explain the process); *Moore*, 533 F.Supp. 2d at 743 (finding valid waiver where arbitration agreement provided detailed explanation of arbitration procedures).

In contrast, this Court has found that employees did not knowingly and intelligently waive their rights to a judicial forum where they "were hired on the spot after a brief interview, during which the hiring manager hurriedly presented them with various documents that they were instructed to sign in order to be considered for the job"; where "managers would place an 'x' in every spot an applicant [was] required to sign, and applicants would be sold to sign every 'x' without any explanation"; and where they were not given an opportunity to revoke their waiver. *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 381-82 (6th Cir. 2005).

Here, Appellants were educated and gave no indication that they did not understand the waivers they were signing, and they successfully used the grievance process on multiple occasions prior to contending that they did not knowingly and intelligently waive their right to a judicial forum. The waiver, however, did not include any information regarding the Grievance Review Board or the procedures that would be used in place of a judicial proceeding. The initial waiver, signed as part of the four-page employment application, read:

> Any dispute arising out of or in connection with any aspect of my employment by the Company, or termination thereof, including by way of example but not limitation, disputes concerning alleged civil rights violations, breach of contract or tort, shall be exclusively subject to review by the Grievance Review Board. Any decision of the Review Board shall be binding to both parties, and enforceable in the circuit court.

11

The Alonsos allege that they were not given any further information regarding the Grievance Review Board until they received an Employee Handbook at Orientation, nearly a month after they were hired. The Employee Handbook outlined the Grievance Review Board procedures in general terms as a four-step process. The Handbook instructed employees to reference Administrative Policy #415, which was located online. That Policy, in turn, provided a detailed explanation of how the Grievance Review Board operated.

At the time the Alonsos signed waivers of their rights to a judicial forum, they had no idea what the Grievance Review Board process entailed. They were never informed of their right to revoke their waiver. They were not given any documentation regarding the process until almost a month after they began their employment with HVA. Even then, the document they were given described the process in general terms, and pointed them to a website where they could find additional, more detailed information. They cannot be said to have knowingly and voluntarily waived their right to a judicial forum when they were not informed of the alternative procedures until a month after they began working for HVA. *Cf. Seawright*, 507 F.3d at 971 (explaining extensive efforts taken by defendant employer to inform employees of new dispute resolution procedures before requiring employees to waive all rights to a judicial forum).

### C. STATUTE OF LIMITATIONS

As part of their employment applications, the Alonsos signed a statute of limitations waiver, agreeing to bring any claims arising out of his employment within six months of termination of

employment.[5]  Alan Alonso's employment was terminated on February 27, 2008.  He filed his complaint in the district court on October 14, 2008, more than six months after his employment was terminated.  Alan Alonso contends that the waiver was invalid because it was not knowing and voluntary, that the USERRA prohibits contractual shortening of the statute of limitations, and that if the six-month statute of limitations applies, it was tolled while he was involved in the GRB procedure.

Because we have already found that the Alonsos did not knowingly, intelligently, and voluntarily sign the waivers included in their employment applications due to the fact that they were not given any information regarding the Grievance Review Board procedures, we hold that their statute of limitations waivers were, likewise, invalid.

## V.  CONCLUSION

For the reasons set forth above, the district court's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this Opinion regarding Appellants' statutory claims.

---

[5]The waiver read:

> I further recognize that if employed by the company, I agree, in partial consideration for my employment, that I shall not commence any action or other legal proceeding relating to my employment or the termination thereof more than six months after the termination of such employment and agree to waive any statute of limitations to the contrary.

*Alonso*, 2009 WL 1469641, at *14.